## CHARLES SADOWSKI v. THE MICHIGAN CAR COMPANY.

*Master and servant—Negligence—Fellow-servants.*

1. The court cannot properly pass upon the question of negligence, except in cases where the facts are such that all reasonable men would be likely to draw from them the same inference.

2. The doctrine of the non-liability of the master for injuries sustained by a servant through the negligence of his fellow-servant has no application unless the one injured and the one at fault were engaged in the same general employment, and whatever conflict has arisen in cases has been as to what should be considered the same general employment.

3. The rule adopted by the federal courts, and in most of the states, and which seems to us most in consonance with reason and humanity, is that those employed by the master to provide or to keep in repair the place, or to supply the machinery and tools, for labor, are engaged in a different employment from those who are to use the place or appliances when provided, and are not, as to each other, fellow-servants.

4. In this case a common laborer employed in a lumber-yard is held not to have been a fellow-servant with the yard foreman and his men, who by the direction of the superintendent dug a ditch in which to lay a water-pipe, left it uncovered, whereby the laborer was injured.

Error to Wayne. (Hosmer, J.) Argued November 11, 1890. Decided December 24, 1890.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*William H. Wells,* for appellant.

*James H. Pound (F. W. A. · Kurth,* of counsel), for plaintiff.

[The points of counsel are fully stated in the opinion.— REPORTER.]

CAHILL, J. This is an action for damages for personal injuries received by the plaintiff July 2, 1887, while in the employment of the defendant. The verdict was for the plaintiff, and defendant brings error.

I take the following statement of facts substantially from appellant's brief:

Defendant was engaged in the manufacture of cars in the city of Detroit, and employed about 2,200 men. One part of its premises was known as the "lumber-yard." James McGregor was the general superintendent. His son, James C. McGregor, was foreman of the lumber-yard. Plaintiff had worked for the defendant about five years as a common laborer. His work was in the lumber-yard. At the time of the injury, he was engaged with his mate in conveying pine strips from the piles of lumber in the yard to the planing-mill. Tramways extended through the yard from place to place, as shown by the map appended. Upon these tracks ran small platform cars, or trucks, about four feet by six feet, called "larries," which were loaded with the material and pushed by the men to the place where the material was needed. There were small turn-tables at the crossings and intersections. The plaintiff had been at work with a larrie for over a year, and was familiar with the tracks. The men were accustomed to use whichever track they could use to the best advantage.

At the time of the accident, the plaintiff with his mate was pushing a heavy load of strips, which was taller than Sadowski, so that he could not look over it. The pile from which the larrie was loaded was near track No. 4 on the map. From the piles at the north end of the yard, two main tracks ran to the planing-shop at the south end of the yard, one of the tracks being on the east, and the other on the west, side of the kiln and planing-shop. These main tracks are numbered 1 and 5 on the map. Ordinarily, the course would have been for plaintiff to push the larrie along track 4 to turn-table at junction with track 6; thence east along track 6 to turn-table C; thence south along track 1 to the planing-shop. When plaintiff had reached the point indicated on the map by letter L, he observed a team with a load of planks at the point K upon the track. This prevented their reaching the mill by track 1, and, without direc-

tions from any one, they pushed the car in the opposite
direction to the turn-table G; thence along main track 5
to turn-table H, intending to go thence by the cross-
track to the main track 1, and thence to the planing-
shop.  At the turn-table H the gang-boss met them, and
told them to hurry up.  He helped them turn the car
around, and helped to shove it.  The gang-boss took hold
with plaintiff and his mate and helped push the larrie.
They pushed it over the turn-table H, and along the
cross-track towards the turn-table D, and, when some 18
or 20 feet from the turn-table H, they came to a ditch
which had been dug the night before under the track,
into which the plaintiff fell.  The two men who were

with him saw the ditch, and stepped over it. They were on the outside at the corners of the car, while plaintiff was in the center. The plaintiff was pushing with his breast and shoulders, and exerting all his strength.

The ditch was about four feet deep, and about three or four feet wide at the top. It was intended for a water-pipe for a pen-stock. It was dug there under the general superintendent's directions. James C. McGregor, the yard foreman, received orders from the superintendent to put in the water-pipe. He went to Murtisfield, the gang-boss; told him to put on some men, and start them to digging. They completed the ditch the night before the accident, and left it uncovered. The accident occurred about half past 8 in the morning. The job of putting in the water-pipe, involving the digging of similar ditches, had been going on about a week. The space between the turn-table and the ditch was unobstructed to the view; the tracks were laid upon the level ground. Plaintiff knew all the tracks, had used most of them, and was accustomed to use whichever could be used to the best advantage. The dirt from the ditch was piled upon the side. Plaintiff saw the dirt, but could not say on which side it was. He testified that he had no warning to look out for the ditch, and that he did not know that the ditch was there, and from the way in which he was pushing he could not see the ditch until he fell into it.

The errors relied on by defendant for a reversal of the judgment are two:

1. That the court erred in charging the jury that it was the duty of the master to furnish his employés with a suitable and safe place in which they may perform their work.

2. His refusal to charge the jury that the verdict must be for the defendant.

It is claimed that the charge of the court complained of amounted to an instruction that the defendant was an insurer of the safety of its premises; whereas it is contended that the rule is one of reasonable care simply, and that an employer is not responsible for any neglect to provide his servant with a safe place in which to work, unless it appear that such neglect is due to a want of

reasonable care on the part of the master. Conceding the rule to be as contended for by counsel for defendant, I do not find the charge of the court, taken as a whole, open to the criticism he makes. It is true the charge starts out with this language:

"It is the duty of a master to furnish his employés with a suitable and a safe place in which they may perform their work; and he cannot delegate this responsibility so as to make the person who is intrusted with this duty a co-employé."

This language is quoted almost exactly from that of Mr. Justice MORSE in *Van Dusen v. Letellier*, 78 Mich. 502; but neither Mr. Justice MORSE nor the learned circuit judge intended to lay down a rule which would make the master the insurer of those who were in his employ. The language used in each case is to be construed with reference to the facts about which they were speaking. The circuit judge in this case supplemented the language objected to with the following:

"The question for your consideration in this case is whether, after having constructed that ditch, they were *negligent* in leaving it unguarded. *  *  * Unless you find in this case that the defendant has been *guilty of negligence,* unless you find that the digging and leaving the ditch unguarded as I said before, at the point where the rails intersected the ditch, was such *negligence as a reasonably prudent person* would not have been guilty of, there can be no recovery in this case."

This language is only consistent with the idea that the defendant must be found by the jury to have been guilty of a want of reasonable care in providing a safe place for the plaintiff to work in before it could be held liable.

In support of the second proposition, that the jury should have been instructed for the defendant, counsel says:

"1. There is no evidence of negligence on the part of the defendant.

"2. If there was any negligence, it was that of a co-employé."

We are not prepared to say as a matter of law that the leaving of this ditch uncovered, under the circumstances, was not negligence. It was entirely unnecessary. It was accompanied with more or less risk. It was well known by the foreman of the yard, and by the gang foreman, under whose immediate direction the work was done, that these tracks were liable to be used at any time of the day. It was known that a man standing immediately behind one of the larries, pushing a load with all his strength, would have little opportunity to look about him for unexpected dangers. The question of negligence, where the case from the facts is not free from doubt, should be left to the jury. *Detroit, etc., R. R. Co. v. Van Steinburg,* 17 Mich. 99; *Hassenyer v. Railroad Co.,* 48 Id. 205; *Sheldon v. Railroad Co.,* 59 Id. 172. The court cannot properly pass upon the question of negligence, except in cases where the facts are such that all reasonable men would be likely to draw from them the same inference. *Lake Shore & M. S. R. R. Co. v. Miller,* 25 Mich. 274.

It remains for us to consider whether the negligence was that of a fellow-servant. It was said in *Morton v. Railroad Co.,* 81 Mich. 423, that the rule may now be considered settled in this State, as well as in most of the states, not only that a master is bound to use reasonable care in providing safe tools and appliances for the use of workmen in his employ, but that this is a duty which cannot be delegated to another, so as to relieve him from personal responsibility. What was there said, in reference to tools and appliances for the use of workmen, is equally true of the duty of the employer in providing a safe place for his servants to work in. *Van Dusen v. Letellier,* 78 Mich. 502. It is contended by defendant's counsel that—

"It is to reason fallaciously to say that a master is bound to furnish and maintain a safe place to work; that the negligence of a servant in performing his work has resulted in unsafety; that this is a violation of the duty of the master; and that in such violation the servant represents the master. If such reasoning were sound, there would be no decision of any court relieving a master from liability where a servant was injured through the fault of another; for the injury necessarily is occasioned by the place or appliance being made unsafe by the act or omission of the other servant. The happening of the accident, and the unsafe condition of the premises at the time of the accident, are not conclusive that the obligation of the master to use reasonable diligence has not been fulfiled, or that the unsafe condition is not the result of the lapse from duty of another servant, who is employed in such a capacity that he and the injured person are mutually subject to the consequence of each others' faults."

But the ingenious reasoning of counsel fails to take account of an important limitation upon the rule which relieves a master from liability when a servant is injured through the fault of another. That doctrine was never applied unless the one injured and the one at fault were engaged in the same general imployment. Whatever conflict has arisen in cases has been as to what should be considered the same general employment. The rule adopted by the federal courts, and in most of the states, and which seems to us most in consonance with reason and humanity, is that those employed by the master to provide or to keep in repair the place, or to supply the machinery and tools, for labor, are engaged in a different employment from those who are to use the place or appliances, when provided, and they are not therefore, as to each other, fellow-servants. In such case, the one whose duty it is to provide and look after the safety of the place where the work is to be done represents the master in such a sense that the latter is liable for his

negligence.    In *Ford v. Railroad Co.*, 110 Mass. 240, it was said:

"The agents who are charged with the duty of supplying safe machinery are not, in a true sense of the rule relied on, to be regarded as fellow-servants of those who are engaged in operating it.   They are charged with a master's duty to his servant.   They are employed in distinct and separate departments of service, and there is no difficulty in distinguishing them, even when the same person renders service by turns in each, as the convenience of the employer may require."

In *Railroad Co. v. Herbert*, 116 U. S. 653 (6 Sup. Ct. Rep. 590), Mr. Justice Field, speaking of the distinction that he found to exist between the providing of safe machinery and the business of handling and moving it, said:

"The two kinds of business are as distinct as the making and repairing of a carriage is from the running of it."

Applying this rule to the facts under consideration, if it be true that the lumber-yard in which the plaintiff was employed, and which it was the duty of the master to keep in a reasonably safe condition, was, through the negligence of any one employed by the master to put in the water-pipe, left in a dangerous condition, that negligence is attributable to the master.   The relation of fellow-servants did not exist between the plaintiff, who was employed in handling lumber, and McGregor and his men, who were engaged in a distinct labor affecting the safety of the yard as a place to work in.

It follows that there is no error in the record, and the judgment must be affirmed, with costs.

The other Justices concurred.