McDONALD v. MICHIGAN CENTRAL RAILROAD CO.[1]

1. RAILROADS—CAR INSPECTOR—CONDUCTOR—FELLOW-SERVANTS.
   A car inspector whose duty it is to supply safe machinery is not a fellow-servant of a freight conductor whose duty it is to operate the machinery.[2]

[1] Rehearing denied March 23, 1903.
[2] As to what servants are deemed to be in the same common employment, apart from statutes, where no question as to vice-principalship arises, see note to Sofield v. Smelting Co., (N. J.) 50 L. R. A. 417.

2. SAME—RULES OF COMPANY—NEGLIGENCE.

The conductor of a freight train tested the brakes on a car in the usual way, by setting and releasing them, before he started his train in the morning. At the third station from where the company's inspector examined the car, the conductor applied the brakes, when something gave way, and he was thrown under the car and injured. It appeared that the chain attached to the brake-mast below the platform had before that time parted, and been repaired with hay wire, which gave way under the strain. *Held*, that the conductor had neglected no duty imposed upon him by a rule requiring him to know that there was a reliable brake on the car.

Error to Gladwin; Sharpe, J. Submitted November 21, 1902. (Docket No. 111.) Decided March 6, 1903.

Case by Joseph D. McDonald against the Michigan Central Railroad Company for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*O. E. Butterfield* (*Henry Russel*, of counsel), for appellant.

*De Vere Hall*, for appellee, cited the following cases, in addition to those given in the opinion:

*Swoboda* v. *Ward*, 40 Mich. 420; *Tangney* v. *J. B. Wilson & Co.*, 87 Mich. 453 (49 N. W. 666); *Ashman* v. *Railroad Co.*, 90 Mich. 571 (51 N. W. 645); *Balhoff* v. *Railroad Co.*, 106 Mich. 612 (65 N. W. 592); *Anderson* v. *Railroad Co.*, 107 Mich. 591 (65 N. W. 585); *Woods* v. *Railway Co.*, 108 Mich. 396 (66 N. W. 328); *Fones* v. *Phillips*, 39 Ark. 17 (43 Am. Rep. 264); *Daves* v. *Railroad Co.*, 98 Cal. 20 (32 Pac. 708, 35 Am. St. Rep. 133); *Denver Tramway Co.* v. *Crumbaugh*, 23 Colo. 363 (48 Pac. 503); *McElligott* v. *Randolph*, 61 Conn. 157 (22 Atl. 1094, 29 Am. St. Rep. 181); *Baltimore, etc., R. Co.* v. *Elliott*, 9 App. D. C. 341; *Chicago, etc., R. Co.* v. *Kneirim*, 152 Ill. 458 (39 N. E. 324, 43 Am. St. Rep. 259); *Cincinnati, etc., R. Co.* v. *McMullen*, 117 Ind. 439 (20 N. E. 287, 10 Am. St. Rep. 67); *Brann* v. *Railroad Co.*, 53 Iowa, 595 (6 N. W. 5, 36 Am. Rep. 243); *Atchison, etc., R. Co.* v. *Moore*, 29 Kan. 644; *Shanny* v. *Androscoggin Mills*, 66 Me. 420; *Tierney* v. *Railway*

Co., 33 Minn. 311 (23 N. W. 229, 53 Am. Rep. 35); *Coontz* v. *Railway Co.*, 121 Mo. 652 (26 S. W. 661); *Chicago, etc., R. Co.* v. *Kellogg*, 54 Neb. 127 (74 N. W. 454); *Jaques* v. *Manufacturing Co.*, 66 N. H. 482 (22 Atl. 552, 13 L. R. A. 824); *Flike* v. *Railroad Co.*, 53 N. Y. 549 (13 Am. Rep. 545); *Chesson* v. *Lumber Co.*, 118 N. C. 59 (23 S. E. 925); *Cameron* v. *Railway Co.*, 8 N. Dak. 124 (77 N. W. 1016); *Anderson* v. *Bennett*, 16 Or. 515 (19 Pac. 765, 8 Am. St. Rep. 311); *Mulvey* v. *Locomotive Works*, 14 R. I. 204; *Carter* v. *Oil Co.*, 34 S. C. 211 (13 S. E. 419, 27 Am. St. Rep. 815); *H. & T. C. R. Co.* v. *Marcelles*, 59 Tex. 334; *Gardner* v. *Railroad Co.*, 150 U. S. 360 (14 Sup. Ct. 140); *Davis* v. *Railroad Co.*, 55 Vt. 84 (45 Am. Rep. 590); *Moon's Adm'r* v. *Railroad Co.*, 78 Va. 745 (49 Am. Rep. 401); *Ogle* v. *Jones*, 16 Wash. 319 (47 Pac. 747); *Cooper* v. *Railway Co.*, 24 W. Va. 37; *Brabbits* v. *Railway Co.*, 38 Wis. 289.

MOORE, J. The plaintiff recovered a judgment against the defendant for injuries received by him while in its employ. The case is brought here by writ of error.

The plaintiff was in charge of a freight train running from Grayling to Mackinaw City. Grayling is about half way between Bay City and Mackinaw City. The defendant maintains a car repair shop at Bay City. At Grayling it has a train-master and four car inspectors or repairers. At Mackinaw City it has one car inspector or repairer. The inspectors or repairers at Mackinaw City and Grayling inspect the cars, and repair such broken or defective parts as they are able to with the appliances at hand, which are not sufficient to enable them to do any welding. If the repairs are of such a character as to require it, the cars are sent to the shop at Bay City.

While in charge of his train in September, 1901, as it approached the third or fourth station north from Grayling, the plaintiff attempted to set the brake upon the way-car. Something gave way. The plaintiff was thrown between the way-car and the car next front of it. The wheels of the way-car passed over him, injuring him severely. An examination after the injury showed that

the chain attached to the lower part of the brake-mast had before that parted, and been repaired by using a wire, which was supposed to have been hay wire. This wire gave way under the strain, and hence the accident. This accident occurred upon the second round trip of the way-car after it left the repair shop at Bay City. It does not appear when or by whom the hay wire was used to repair the chain. It is claimed by defendant the car was in good repair when it left the shop at Bay City. This is not admitted by plaintiff. Mr. Trumley, the inspector at Grayling, who claims he inspected the car at that place, was a witness on the part of the defendant, and disclaimed all knowledge of the wire. The inspector from Mackinaw City was not produced as a witness.

Counsel for defendant say there are two questions presented by the record:

1. The liability of a railroad company to a freight conductor injured by the negligence of a car inspector, whose duty it was to inspect and repair the way-car.

2. The right of such a conductor to recover for injuries resulting from an unreliable brake upon a way-car, when, by a rule of the company, he was "required to know that there was a reliable brake" on the car before making use of it.

As to the first of these questions, the position of the defendant is shown by the following statements taken from the brief of counsel:

"The duty of the company is:

"(1) To provide a reasonably safe place and reasonably safe appliances.

"(2) To use reasonable care to maintain place and appliances in a reasonably safe condition."

It is said the car was reasonably safe when it left the shop at Bay City. In regard to the duty of the company to maintain it in a reasonably safe condition, it is said:

"It performs the duty by employing a competent servant to inspect and repair defects when they appear; and, before it can be held liable for injuries resulting from

defects arising in the course of operation, it must have notice, either actual or constructive, that the defect exists, or that the servant is not performing the work assigned to him with reasonable care. In other words, there must be evidence that the master is not exercising reasonable supervision over his servants to see that they perform their work with reasonable care. There is no delegation of duty. It is performance. It is an exercise of reasonable care to maintain the appliance in a reasonably safe condition."

Again:

" The company furnishes this way-car to its Grayling-Mackinaw division. It has a number of employés who are to make use of the car, some to inspect it, some to ride upon it, and some to set its brakes. The man who is to inspect it fails in his work. The company has no means of knowing what moment an employé, hitherto trusty and reliable, will prove deficient. But it has exercised reasonable care to preserve the reasonably safe condition of this way-car while it is in use by the employés of that division, by employing competent men to inspect the car at the end of every trip. Unless the plaintiff is able to show that the company knew of the existence of the defect, or that it had existed for a sufficient length of time to impose upon the company the duty to know, he cannot recover. This is the full measure of the defendant's duty to the plaintiff in this case, and we submit it is not shown to have neglected that duty."

Counsel cite cases which it is claimed sustain this contention.

It is the claim of plaintiff that the duty resting on defendant is not discharged by furnishing safe cars in the first instance; that such duty of maintenance is a continuing one, which it discharges through the employment of inspectors and repairers, and that the latter must exercise reasonable watchfulness and care to maintain such cars in a reasonably safe condition; and that defendant is liable for any omission of duty in that regard on the part of such inspectors or repairers, where, as a proximate cause of such omission, injury results to plaintiff, as one using such car.

It must be conceded the authorities are not agreed, but

the principles involved are not new in this State. The difficulty lies in the application of them to a given case. In *Morton* v. *Railroad Co.*, 81 Mich. 423 (46 N. W. 111), Justice CAHILL, speaking for the court, said:

"The rule may now be considered settled in this State, as well as in most of the States, not only that a master is bound to use all reasonable care in providing safe tools and appliances for the use of workmen in his employ, but that this is a duty which cannot be delegated to another so as to relieve him from personal responsibility. *Johnson* v. *Spear*, 76 Mich. 139 (42 N. W. 1092, 15 Am. St. Rep. 298); *Van Dusen* v. *Letellier*, 78 Mich. 492 (44 N. W. 572); *Brown* v. *Gilchrist*, 80 Mich. 56 (45 N. W. 82, 20 Am. St. Rep. 496).

"The duty of the master to his employé in this respect is clearly and well stated by Mr. Justice MORSE in *Van Dusen* v. *Letellier*, just cited, at page 502:

" 'It is well settled by all the authorities that the master must provide his servant with a safe place to work in, and furnish him with suitable machinery and appliances with which to perform such work, and it is his duty to keep such machinery and appliances in good repair. If he cannot do this himself personally, he must provide some other person to take his place in this respect; and the person to whom the master's duty is thus delegated—no matter what his rank or grade; no matter by what name he may be designated—cannot be a servant in the sense or under the rule applicable to injuries occasioned by fellow-servants. Such person is an agent, and the rules of law applicable to principal and agent must apply.'

"This doctrine is also clearly stated by Justice Field in *Northern Pacific R. Co.* v. *Herbert*, 116 U. S. 650 (6 Sup. Ct. 594), where the whole question is carefully discussed, and numerous authorities in New York, Massachusetts, Maine, and other States to the same effect discussed and approved. Four of the judges dissented from his opinion, upon the ground that the case was governed by a special statute in Dakota, but expressed no opinion as to the common-law liability of the defendant under the circumstances of that case.

"In 1 Shear. & R. Neg. (4th Ed.) §§ 194, 204, this question is discussed and stated as follows:

" 'SEC. 194. The master also personally owes to his servants the duty of using ordinary care and diligence to provide for their use

in his service sound and safe materials, instruments, and accommodations, and such appliances as are reasonably calculated to insure their safety. He is also personally bound to inspect and examine all these things from time to time, and to use ordinary care and skill to discover and repair defects in them.'

" 'SEC. 204. None of the duties which have been previously stated as devolving upon the master personally can be by him delegated to any agent so as to relieve him from personal responsibility. He may, and often must, delegate the performance of such duties to subordinates; but he remains responsible to all his servants for the acts of these subordinates in that particular capacity, to the same extent as if those acts were literally his own.'

"The doctrine of the text is ably supported by the citation of authorities."

This case is cited with approval in *Sadowski* v. *Car Co.*, 84 Mich. 100 (47 N. W. 598). After quoting from the case cited and from the argument of counsel, the learned justice said:

"But the ingenious reasoning of counsel fails to take account of an important limitation upon the rule which relieves a master from liability when a servant is injured through the fault of another. That doctrine was never applied unless the one injured and the one at fault were engaged in the same general employment. Whatever conflict has arisen in cases has been as to what should be considered the same general employment. The rule adopted by the Federal courts, and in most of the States, and which seems to us most in consonance with reason and humanity, is that those employed by the master to provide or to keep in repair the place, or to supply the machinery and tools for labor, are engaged in a different employment from those who are to use the place or appliances when provided, and they are not, therefore, as to each other, fellow-servants. In such case, the one whose duty it is to provide and look after the safety of the place where the work is to be done represents the master in such a sense that the latter is liable for his negligence.

"In *Ford* v. *Railroad Co.*, 110 Mass. 240 (14 Am. Rep. 598), it was said:

" 'The agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule relied on, to be regarded as fellow-servants of those who are engaged in operating

it. They are charged with a master's duty to his servant. They are employed in distinct and independent departments of service, and there is no difficulty in distinguishing them, even when the same person renders service by turns in each, as the convenience of the employer may require.'

"In *Northern Pacific R. Co.* v. *Herbert*, 116 U. S. 653 (6 Sup. Ct. 596), Mr. Justice Field, speaking of the distinction that he found to exist between the providing of safe machinery and the business of handling and moving it, said:

" ' The two kinds of business are as distinct as the making and repairing of a carriage is from the running of it.' "

The case of *Sadowski* v. *Car Co.* was cited and quoted from in *Roux* v. *Lumber Co.*, 94 Mich. 607 (54 N. W. 492). The fact is well recognized that there is a difference between the duty of furnishing a safe place or safe appliance to the employé, and the duty of seeing that the place or appliance so furnished is properly used.

In *McDonald* v. *Railroad Co.*, 108 Mich. 7 (65 N. W. 597), Justice MONTGOMERY, speaking for the majority of the court, said:

" The duty which the master owes to provide a reasonably safe place to work, and machinery in a reasonably safe condition, is not discharged for all time by providing machinery or premises safe in the first instance. *Van Dusen* v. *Letellier*, 78 Mich. 492 (44 N. W. 572). This duty cannot be discharged by providing for an inspection by a fellow-servant, for wherever the duty of inspection, for the purpose of ascertaining whether there be a necessity to repair, or whether the machinery is in safe condition, exists, it is the master's duty. The duty of diligence in maintaining the machinery in a reasonably safe condition necessarily involves the duty of the master to take such reasonable measures to inform himself from time to time of the condition of the machinery as common prudence dictates."

And such we understand is the law. See the many cases cited in the brief of counsel for the plaintiff.

We now come to the consideration of the second question: Does the enactment of rule 50 relieve the defendant

of liability? The material parts of the rule read as follows:

" Conductors must know at all times that their train is provided with everything necessary to enable them to comply with the regulations of the road. They are required to know that there is a reliable brake on the rear car, and that a proper man is kept at it while the train is in motion."

It is the claim of defendant that the rule imposed upon the plaintiff the risk of all dangers discernible by a prudent inspection, and that the defect was easily discernible; counsel citing *Brennan* v. *Railroad Co.*, 93 Mich. 156 (53 N. W. 358); *Enright* v. *Railway Co.*, 93 Mich. 412 (53 N. W. 536); *Whalen* v. *Railroad Co.*, 114 Mich. 524 (72 N. W. 323); *Peppett* v. *Railroad Co.*, 119 Mich. 640 (78 N. W. 900). An examination of these cases will show they are easily distinguishable from the one at bar. In the first case plaintiff knew of the dangers which it was claimed constituted negligence, and he also violated a rule of the company of which he had notice, which forbade him to do the thing he did. In the second case the plaintiff was hurt because of the negligence of a fellow-servant who was violating the positive requirements of a rule. In the third case the plaintiff was violating the requirements of a positive rule. In the last case cited, the following is stated in the opinion of the court:

"The following facts are established by the evidence
"1. That the engine was properly constructed.
"2. That defendant had performed its full duty as to inspection.
"3. It was the duty of the decedent, both after coming in and before going out, to inspect the engine, and, after coming in, to minute in a book, kept for that purpose, any repair needed. He did make such inspection, but reported nothing wrong. The wearing, if any there was, was easily discernible. He therefore assumed the risk of such defect."

It is hardly believable that, if the inspector at Grayling had made the inspection which it was his duty to

make, the defect in the chain would have escaped his observation.    It would have been easy for the framer of the rule to have said, in so many words, that the conductor should inspect the brake, if the company intended to impose that duty upon him.    The plaintiff testified that, before he started his train out in the morning, he tried the brakes at each end of the car in the usual and customary way, by setting them up and releasing them, and that they worked properly.    It is manifest this was not such a severe test as the chain would be subjected to in an effort to stop a running train on a down grade.    It also appears that that portion of the brake-mast around which the chain winds was below the platform of the car, and, as the chain wound around it, the wire would be concealed.    There is nothing in the record to show that plaintiff neglected any duty imposed upon him by the rule.    See *Lake Shore, etc., R. Co.* v. *Parker*, 131 Ill. 557 (23 N. E. 237).    The case was carefully tried and properly submitted to the jury.

Judgment is affirmed.

HOOKER, C. J., CARPENTER and MONTGOMERY, JJ., concurred.    GRANT, J., took no part in the decision.