GELLER *v.* BRISCOE MANUFACTURING CO.

1. MASTER AND SERVANT — UNSAFE WATER COOLER — CONTRIBU-
TORY NEGLIGENCE.

> Where an employer furnished water coolers out of which its
> employés could drink, and poison was placed in one of them
> for the purpose of cleansing it, without any warning to em-
> ployés not to drink therefrom, an employé was not guilty of
> contributory negligence in drinking from it.

2. SAME—UNEXPECTED ACCIDENT.

> In such case the resulting injury to the employé could not be·
> said to be an unexpected accident, but, rather, was an event
> to be anticipated.

3. SAME—NEGLIGENCE—QUESTION FOR JURY.

> A jury is justified in finding that a direction by a foreman in
> a factory to put potash in a water cooler from which em-
> ployés drank, unaccompanied by instructions to adopt pre-
> cautionary measures against injury, was negligence.

4. SAME—DUTY OF MASTER—FELLOW-SERVANTS.

> An employer is bound to use due care to see that a water·
> cooler furnished for the use of its employés shall in the first
> instance be reasonably safe for use, and is chargeable with
> the negligence of any subordinate to whom it delegates the
> duty; the latter in such case acting, not as a fellow-servant,
> but as the representative of the employer. So *held* where
> potash was placed in a cooler manufactured by the employer,
> after it had been in use for two weeks, by direction of a fore-
> man, for the purpose of cleansing it of red lead and grease
> used in its construction, and an employé drank therefrom, to·
> his injury.

Error to Wayne; Rohnert, J. Submitted January 5,.
1904. (Docket No. 5.) Decided April 19, 1904.

Case by Charles Geller against the Briscoe Manufactur-
ing Company for personal injuries. From a judgment for
plaintiff, defendant brings error. Affirmed.

*Keena & Lightner*, for appellant.

*Dohany & Dohany*, for appellee.

CARPENTER, J.   Plaintiff was an employé, working in the manufactory of defendant.   In the room in which plaintiff worked were three water coolers, called "Hygienic water coolers."   They were manufactured by defendant, and furnished drinking water to plaintiff and his co-employés.   On the morning of July 17, 1902, plaintiff drank of the contents of one of these coolers.   What he drank was a mixture of potash and water, an irritant poison, and it seriously injured him.   According to his testimony, there was nothing about the cooler to warn him that he might not drink therefrom.   This poison had been placed in the cooler by one Fenrich, by the direction of the defendant's foreman, for the purpose of cleaning the tank of red lead, which gave an unpleasant taste to the water.   At the time plaintiff drank the mixture, Fenrich had not completed the operation of cleaning the tank, but had stepped aside to get more potash.   The issue was submitted to the jury, who rendered a verdict for the plaintiff.   We are asked to reverse the judgment on the ground that there was no evidence of defendant's negligence, that the evidence established plaintiff's contributory negligence, and that the injury to the plaintiff was an unexpected accident.

Respecting the claim that the plaintiff was guilty of contributory negligence, we think it sufficient to say that, if the plaintiff's testimony was true,—and this was a question for the jury,—he was not guilty of contributory negligence.

We think it equally clear that plaintiff's injury did not result from an unexpected accident.   It seems to us that his injury was just what should have been anticipated from putting this poison in the drinking water.

The serious question in the case is whether the plaintiff's injury was the result of defendant's negligence.   It may be inferred from the record that defendant's foreman,

who directed the potash to be put in the water, had full authority to act. It is also clear that, if this direction was not negligence as a matter of law, the jury was warranted in finding that it was negligence (see *Bower* v. *Peate*, L. R. 1 Q. B. Div. 321; *Robbins* v. *City of Chicago*, 4 Wall., at pages 678, 679), for in giving this direction he did not accompany it with instructions to adopt precautionary measures to prevent injury. It would be difficult to imagine a more negligent act.

In giving the directions to put the poison in the water cooler, did the foreman act as a representative of his employer, or as a fellow-servant? The cooler had been in place about two weeks. It was manufactured by defendant. It was necessary to clean it, because red lead and grease, used in its construction, contaminated the water. We think it may be inferred that red lead would tend to make the water unsafe for drinking purposes, as well as unpleasant. In our judgment, these facts warrant the inference that defendant did not furnish a reasonably safe receptacle for drinking water to be used by its employés, and we think it may also be inferred that due care on its part would have made it safe. If defendant had furnished in the first instance a reasonably safe water cooler, its obligation to use due care to see that it did not become unsafe through user is a question not involved in this suit. We think it clear, however, that defendant was bound to use due care that the water cooler furnished for the use of its employés should in the first instance be reasonably safe for use, and that it was chargeable with the negligence of any subordinate to whom it delegated this duty. See *Van Dusen* v. *Letellier*, 78 Mich. 492 (44 N. W. 572); *Morton* v. *Railroad Co.*, 81 Mich. 423 (46 N. W. 111); *Sadowski* v. *Car Co.*, 84 Mich. 100 (47 N. W. 598); *Roux* v. *Lumber Co.*, 94 Mich. 607 (54 N. W. 492); *McDonald* v. *Railroad Co.*, 132 Mich. 372 (93 N. W. 1041). This duty was never completely performed. Defendant did not undertake its personal performance. It delegated that duty to its foreman, and he was undertaking to per-

form it when he gave the direction in question. In performing this duty, he was not acting as a fellow-servant, but was acting as the representative of the defendant, and defendant is liable for his negligence.

The judgment will be affirmed.

MOORE, C. J., and MONTGOMERY, J., concurred. HOOKER, J., did not sit. GRANT, J., took no part in the decision.