MASNER v. ATCHISON, T. & S. F. RY. CO

(Circuit Court of Appeals, Ninth Circuit. March 14, 1910.)

No. 1,752.

1. MASTER AND SERVANT (§§ 163, 190*)—INJURIES TO SERVANT—RAILROADS—SWITCHMEN—NEGLIGENCE.

Civ. Code Cal. § 1970, provides that an employer is not bound to indemnify his employé for losses suffered in consequence of the negligence of another servant, unless the negligence causing the injury was committed in the performance of a duty the employer owes by law to the employé, provided that the employer shall be liable for such injury when the same results from the wrongful act, neglect, or default of any agent or officer of the employer, superior to the employé, or of a person employed by the employer having the right to control and direct the employé's services. Plaintiff, a switchman, was injured, while attempting to adjust a coupling,

by a string of other cars striking one of the cars on which he was work-ing, while they were being pushed down the track, without any one in charge of them. Plaintiff's foreman testified that the reason he sent the cars down without any one in charge was because he wanted to get his work done; that he could not have done the work put before him with the men he had if every cut of cars had been ridden; and that he had had accidents before in the same operations. *Held* to show negligence of the foreman in allowing cars to run down the track without any one in charge of them, and also negligence of the railroad company in failing to provide a sufficient number of switchmen to do the work required.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 328–330, 449–474; Dec. Dig. §§ 163, 190.*]

**2.** MASTER AND SERVANT (§ 240*)—INJURIES TO SERVANT—CONTRIBUTORY NEG-LIGENCE.

Where a switchman was injured while attempting to open a coupling at night while the work of switching was going on, without signaling his foreman to stop, by reason of certain other cars striking those on which the switchman was working, he having testified that he looked to see if there were any more cars before he placed himself in a dangerous position and saw none, and it appearing that if he had stopped the cars it would have been contrary to custom and likely to have resulted in his discharge, he was not negligent in attempting to make the coupling without doing so, nor because he went between the cars with his back to one of them.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 751–756; Dec. Dig. § 240.*]

**3.** MASTER AND SERVANT (§ 267*)—EVIDENCE—MATERIALITY.

Where, in an action for injuries to a switchman while preparing a cou-pling to couple certain cars, it appeared that plaintiff looked up the track and saw no other cars coming, before he went between them, and that he did not refrain from signaling his foreman to stop because he was afraid of being discharged, but because no occasion for such a signal appeared, a question asked of plaintiff's foreman as to what he would have done if plaintiff had signaled to stop was immaterial.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 267.*]

**4.** NEGLIGENCE (§ 136*)—QUESTION FOR COURT OR JURY.

The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them.

[Ed. Note.—For other cases, see Negligence, Dec. Dig. § 136.*]

In Error to the Circuit Court of the United States for the South-ern Division of the Southern District of California.

Action by Charles B. Masner against the Atchison, Topeka & Santa Fé Railway Company. Judgment for defendant, and plaintiff brings error. Reversed, with instructions.

Burt Chellis and J. W. Swanwick, for plaintiff in error.

E. W. Camp, W. J. Clotfelter, and A. H. Van Cott, for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

MORROW, Circuit Judge. This is an action by the plaintiff in er-ror to recover damages for personal injuries occasioned by the alleged negligence of the defendant in error. The main question involved in this case is whether the court was right in granting defendant's mo-tion for a nonsuit at the close of plaintiff's testimony.

It appears from the evidence that plaintiff was employed by the defendant as a yard switchman in defendant's yard at Barstow, Cal. The west end of the Barstow yard is downgrade, and the cars do not stand on the tracks at this point unless the brakes are set. There were five men in the crew of switchmen at this end of the yard. A Mr. Wagner was foreman and had charge of the work. He had full control and directed the switchmen in their work.

In switching cars from one track to another at this end of the yard, it is necessary to have a man on the top of each cut of cars when going for a distance of 14 car lengths or more to hold them with brakes and keep them from running down the switch and striking and damaging other cars and their contents. On the morning of December 14, 1907, the plaintiff, who prior to that time had been at work in the yard as a switchman for 57 nights, rode down the switch track with a coal car followed by a tank car and a box car. Plaintiff was on the coal car. These cars were not coupled together, and as they moved down the track they bumped together. Plaintiff, accordingly, set the brake on the coal car on which he was riding and got down to adjust the coupling between that car and the tank car so that the two cars would couple when brought together. While attempting to adjust the coupling, a number of cars—four or five—were sent down the switch for a distance of 14 car lengths or more, without any one in charge, and these cars striking forcibly against the cars, the coupling of which plaintiff was attempting to adjust, caught the plaintiff's right arm in the coupling and crushed it so that it had to be amputated. The cut of four or five colliding cars had been sent down the switch by the foreman, Wagner. Upon the trial of the case Wagner testified:

"I cut off the string of cars that injured him (the plaintiff). Nobody went down with that bunch. It is at least 14 car lengths from where I cut them off to where he was injured. * * * The reason I took the chances of sending the cut of cars down without anybody on it was that we wanted to get done work. I had all I could handle ahead of me working right along. I could not have done the work put before me with the men I had to do it with if every cut of cars had been ridden. * * * I have cut off other cuts of cars before this one without anybody on them, lots of them, and have had accidents by so doing, more than once; the worst one I consider was when a brakeman got killed and nobody on them. I have also injured cars all the way from driving in a drawbar to putting them out of service."

This evidence tended to establish the fact that the defendant was negligent either by the negligent act of the foreman in allowing the cars which caused the accident to run down without a switchman and strike the car upon which plaintiff was working, or because of the failure of the company itself in not providing a sufficient number of switchmen to do the work required.

It is provided in section 1970 of the Civil Code of California that:

"An employer is not bound to indemnify his employé for losses suffered by the latter in consequence * * * of the negligence of another person employed by the same employer in the same general business, unless the negligence causing the injury was committed in the performance of a duty the employer owes by law to the employé; * * * provided, nevertheless, that the employer shall be liable for such injury when the same results from the wrongful act, neglect, or default of any agent or officer of such employer, superior to the employé injured, or of a person employed by such employer having the right to control or direct the services of such employé injured."

The testimony was clearly sufficient in either view to establish the liability of the defendant under this statute.

But it is contended that the plaintiff was guilty of contributory negligence in going in between the cars to adjust the coupler without signaling the foreman to stop. The plaintiff testified that the cut-off lever which hooked on to the drawbar would not work from the brake handle on the outside, so he went in between the cars to adjust the coupler by hand. Armstrong, one of the switchmen in plaintiff's crew, testified:

"When a coupler is not in working order, the switchman has to open it with his hand; there is no other way."

The foreman testified:

"I would not have expected him to have stopped me with the cars in that position which required him to go in between and fix them. It would have surprised me if he had. He was not reckless. * * * The reason why I did not expect him to give a stop signal was that it would delay the game and keep the work back. It was a part of his work to get in there and see that the cars were coupled up right. It was expected of him to see that they are kept coupled without stopping me every time he wanted to make a coupling. * * * It was not the custom of the switchmen to stop work in order to fix the coupling. They never did it with me; that is, unless it could not actually be done without stopping the work. * * * Masner might have done more than he did by getting off and stopping me, but he would not have done it very often, though."

The inference to be drawn from this testimony is that the situation did not require the plaintiff to signal the foreman to stop the work of switching, and had he done so he would have been discharged from the service.

It is further contended that it was the duty of the plaintiff to listen for cars coming down the switch before putting himself in a dangerous position between the cars, particularly with his back to the tank car. The plaintiff testified:

"I got off the car I was on, left the brake on it, and went over and looked up the track, saw nothing was coming, and knew the coupler had to be fixed so it would make the cars come together. I no more than got hold of the couplers before three or four or five cars or six bumped into the cars ahead of me, hit me in the back, and drove me against the coupler."

Armstrong, one of the switchmen, testified:

"It was a dark night. A man could not see cars moving at the upper end coming down the stretch."

The testimony of the plaintiff that he did look up the track and saw nothing was coming tended to exonerate him from the charge of negligence in going between the cars without looking for danger; and certainly the court could not infer from the testimony that he was negligent by reason of the single fact that he went in between the cars with his back to the tank car. We do not know, or can we infer from the testimony, that the plaintiff took a specially dangerous position in that respect, and, besides, upon a motion for a nonsuit the plaintiff is entitled to the benefit of all inferences in his favor which the jury could have been justified in drawing from the testimony. Sonnenberg v. Southern Pac. Co., 159 Fed. 884, 886, 87 C. C. A. 64, 66. In our

opinion the testimony tended to show that plaintiff was not guilty of contributory negligence, and, uncontradicted, the testimony would have justified the jury in so finding.

The only other question relates to the action of the court in rejecting testimony which, in view of a new trial, should be determined. When the witness Wagner was upon the stand, he was asked by plaintiff's attorney: "What would you have done if he had stopped you?" The defendant objected to this question as calling for incompetent, irrelevant, and immaterial testimony. The witness had already testified that if the plaintiff had stopped him he would not have done it very often—clearly intimating that the plaintiff would have been discharged from the service if, under the circumstances, he had signaled the foreman to stop the work of switching. But in this connection we must not overlook plaintiff's testimony that he looked up the track and saw no cars coming down the switch. There was therefore no apparent danger calling for a signal from the plaintiff to the foreman; that is to say, the plaintiff did not refrain from signaling the foreman because he was afraid of being discharged, but because it did not appear that there was any occasion for such signal. In this state of the evidence, we do not see how the answer of the witness to the question could have been material.

But upon the question whether the evidence was sufficient to go to the jury we think the court was in error. The language of the Supreme Court in Kreigh v. Westinghouse & Co., 214 U. S. 249, 256, 29 Sup. Ct. 619, 622 (53 L. Ed. 984), is peculiarly applicable to this case:

"This case was taken from the jury when only the plaintiff's evidence had been introduced, and when the plaintiff had the right to have it submitted to the jury in its most favorable aspect if it fairly tended to show liability on the part of the master."

What the Supreme Court said in Gardner v. Michigan Central Railroad, 150 U. S. 349, 360, 14 Sup. Ct. 140, 144 (37 L. Ed. 1107), is also applicable:

"Upon the whole, we see no ground for excepting this case from the rules governing other cases involving questions of fact. The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them, or, in other words, a case should not be withdrawn from the jury unless the conclusion follows as matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish. Railway Company v. Ives, 144 U. S. 407, 417 [12 Sup. Ct. 679, 36 L. Ed. 485]; Railway Co. v. Cox, 145 U. S. 593, 606 [12 Sup. Ct. 905, 36 L. Ed. 829]; Railroad Company v. Miller, 25 Mich. 274; Sadowski v. Car Company, 84 Mich. 100 [47 N. W. 598]."

Under this rule, the case should have been left to the jury under proper instructions.

The judgment of the Circuit Court is reversed, with instructions to grant a new trial.