McDONALD *v.* MICHIGAN CENTRAL RAILROAD CO.

1. MASTER AND SERVANT—DEFECTIVE APPLIANCES—DUTY AS TO INSPECTION.
    The duty which the master owes to his servants to provide a reasonably safe place in which to work, and machinery in a reasonably safe condition, is not discharged for all time by providing machinery or premises safe in the first instance, nor can it be discharged by providing for an inspection by a fellow-servant.

2. SAME.
    The duty of diligence in maintaining machinery in a reasonably safe condition necessarily involves the duty of the master

| | |
|---|---|
| 108 | 7 |
| 107 | 605 |
| 107 | 610 |
| 108 | 7 |
| 117 | 308 |
| 108 | 7 |
| 118 | 278 |
| 108 | 7 |
| 123 | 376 |
| 108 | 7 |
| 124 | 43 |
| '108 | 7 |
| 127 | 207 |
| 108 | 7 |
| s65ⁿʷ | 597 |
| e132 | ¹379 |
| 108 | 7 |
| 137 | ⁵308 |
| 108 | 7 |
| f151 | ¹692 |
| 108 | 7 |
| 152 | 546 |

to take such reasonable measures to inform himself from time to time of its condition as common prudence dictates.

3. Same—Railroad Companies—Inspection of Engines.

Where a railroad company makes no provision for inspection of its engines except by the engineers in charge, who are expected at all practicable times to perform that duty and report defects, they must be held to be the representatives of the company. Grant, J., dissenting.

4. Same—Fellow-Servants—Engineer and Brakeman.

Where, in such a case, an engineer, before starting upon a trip, discovers that the pushbar upon the front of his engine is cracked, but, thinking that it will answer for the trip, which would otherwise be delayed, he does not report the defect, and, in attempting to make a coupling, the pushbar is broken and the brakeman injured, the question whether it was negligence to use the engine in its defective condition is for the jury. Grant, J., dissenting.

5. Injury to Employé—Concurring Negligence.

An action will lie by an employé against his master for injuries sustained by reason of the concurring negligence of the master and of a fellow-servant.

6. Injury to Brakeman—Contributory Negligence.

The negligence of a brakeman, if any, in riding upon the pilot of an engine to the place where a coupling was to be made, cannot be said to have contributed to injuries sustained by him in consequence of the breaking of the pushbar while he was standing upon the crossbar of the pilot attempting to make the coupling, it appearing that it would have been necessary for him, in any event, to get upon the crossbar in order to perform such service.

7. Opinion Evidence—Strength of Appliances.

A locomotive engineer may properly testify whether, in his opinion, apparatus which broke in making a coupling would have been able to withstand the shock if free from defects.

Error to Bay; Maxwell, J. Submitted February 13, 1895. Decided December 30, 1895.

Case by William McDonald against the Michigan Central Railroad Company for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*Hatch & Cooley*, for appellant.

*McDonell & Hall*, for appellee.

HOOKER, J.   The defendant appealed from a judgment rendered in an action brought to recover damages sustained in an attempt to couple an engine to a train of cars.   The accident happened on a branch road running from Gladwin to Pinconning, where it joins the defendant's main line.   On this day the engineer, whose duty it was to inspect the engine, discovered that the pushbar upon the front of the engine was cracked.   This discovery was made just before leaving for Gladwin, and he did not report it, thinking it would answer for the trip, which would otherwise be delayed.   The train consisted of several freight cars, a baggage car, and some coaches.   When within two miles of Gladwin, the water became low in the tank, and the engine was uncoupled, and taken to Gladwin for water.   The plaintiff rode in the cab.   At Gladwin the engine was turned around for convenience in taking water; and, to avoid turning twice more, the engineer determined to couple to the train with the pushbar, and back his engine for the two miles.   On the return from Gladwin to the train, the plaintiff sat upon the pilot, and, when within about two car lengths of the train, he stepped down upon the crossbar of the pilot, and raised the pushbar, which entered the drawhead of the car properly, but was broken by the violence of the shock, as was the brake-beam of the car and a drawbar of the third car beyond. At the time of attempting to make the coupling, the plaintiff stood upon the crossbar of the pilot.   Several witnesses stated that the only prudent or usual way to make a coupling with the locomotive pushbar is to stand upon the pilot, and raise and guide the bar, as the car is approached.   The engine is shown to have struck the train while the former was going at a rate of five or six miles an hour, in consequence of a failure of the brake and reverse lever to work, both of which the engineer said that he used, but without diminishing speed,

although the brake had worked well a moment or two before, when he had slowed down to a degree that required a further use of steam to reach the car. The plaintiff and engineer both testified that this engine had on former occasions failed to respond to the application of the brake quickly. The plaintiff lost his hand.

It was the duty of the defendant to furnish machinery in a reasonably sound and safe condition, and to use ordinary care in keeping the same in repair. This is an absolute duty, which the master cannot relieve himself from by imposing it upon another. There is no claim that defendant did not furnish a reasonably safe pushbar. If there is liability, it must be based upon a failure to use proper care in discovering and remedying the defect. If there was negligence in this, it was either a failure to prudently inspect, or by reason of the use of the defective pushbar after inspection. The record shows that there was no provision for inspection other than inspection by the engineer operating the train. He was expected to inspect his engine at all practicable times, and to report defects. This was no more than common prudence dictates should be required of all operatives of railway trains, and it is to be considered as a part of their duties in and about the operation of their trains; and this is as true when the railroad company makes no other provision for inspection as when it has another regular inspector. Such inspection, in the ordinary operation of the road, is the act of a fellow-servant, as between the engineer and brakeman, and, as between them, does not constitute the engineer a representative of the master. To say that an engineer who should err in attempting to make the next station, after his engine became broken, acted as the representative of his master, thus holding the latter liable to the fireman, who was injured, would be carrying the rule too far. An unreported injury of the brakes known to the brakeman would be another illustration. The duty that the master owes to his patrons requires vigilance and care upon the part of the crew, and the master should be permitted to

require it without subjecting himself to all the consequences following negligence by an inspector proper. The duty of *such* inspection should not be imposed upon operators of trains or machinery, at the master's peril. If he provides for the discovery of defects and repair of his machines with reasonable diligence, it should be enough; and he should be allowed to provide additional precautions and safeguards, through the vigilance of operatives. To hold otherwise would put a premium upon carelessness. Several Michigan cases appear to recognize the distinction made. In *Smith* v. *Potter*, 46 Mich. 258, the failure of the yard inspector to detect a defect in a car received from another road was held to be the negligence of a fellow-servant. A similar holding will be found in *Dewey* v. *Railway Co.*, 97 Mich. 333. These two cases carry the rule further than as stated above, holding, in effect, that a yard inspector of foreign cars is engaged in the common enterprise of operating the train. The case of *Miller* v. *Railway Co.*, 90 Mich. 230, and *Jarman* v. *Railway Co.*, 98 Mich. 135, are also in line with these cases.

But if the company makes no other provision for inspection, and chooses to rely upon the reports of its men, deferring repairs until breaks occur, or until the operators, in due course of business, report defects, we must either say that it has neglected the duty of inspection altogether, or that it has imposed one of its duties upon its operatives, and that it does not fall within the limits of fellow service, or that it may avoid the duty which the law imposes, by invoking the rule of fellow-servant. So long as operatives do report, and the master repairs promptly, the jury may properly say that there is no negligence on the part of the master; but, if defects are not seasonably repaired, the master neglects a duty, and we should not split hairs to determine whether it was his personal carelessness, or that of the agent whom he appoints to apprise him of his impending duty to repair, although such agent be a fellow operative of one who is injured by reason of

a want of seasonable repair. *Brown* v. *Gilchrist*, 80 Mich. 56; *Johnson* v. *Spear*, 76 Mich. 139; *Van Dusen* v. *Letellier*, 78 Mich. 492; *Morton* v. *Railroad Co.*, 81 Mich. 431; *Dewey* v. *Railway Co.*, 97 Mich. 333; McKinney, Fel. Serv. §§ 32, 127; *Fuller* v. *Jewett*, 80 N. Y. 46 (36 Am. Rep. 575); *Flike* v. *Railroad Co.*, 53 N. Y. 549 (13 Am. Rep. 545); *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 196, and cases cited.

Can we say, as matter of law, that the master was negligent, or that he was not negligent, under the testimony contained in this record? The engineer discovered the defect in the pushbar before he left Pinconning, and while there was time and opportunity to give up the trip. It may be said that the defect was not such as to require the defendant to withdraw or delay its train to the inconvenience of its patrons and derangement of its business; that the pushbar need not have been used, or could have been used with care, for one trip, if, indeed, it was not reasonably safe for ordinary use, although slightly checked, —all of which may be true, and such suggestions might be proper for the consideration of the jury upon the question of the negligence in using the engine after this discovery. The exigencies of business may require the temporary use of defective cars and engines, and in this case it is plain that it could have been safely used if no attempt had been made to couple the head of the engine to the cars. Such emergencies call for increased care upon the part of those operating the machinery. Where the person injured is aware of the defect, he takes his chances if he uses the machine. *Ft. Wayne, etc., R. Co.* v. *Gildersleeve*, 33 Mich. 133; *Smith* v. *Car Works*, 60 Mich. 501; *Ragon* v. *Railway Co.*, 97 Mich. 265.

It may be that this pushbar, though checked, was sufficiently strong for any proper or any ordinary use, or, if not, that careful use, such as one aware of the defect might be expected to make of it, would not be hazardous, and, therefore, that the master would have been justified in allowing it to be used for the trip had it been reported.

There may be room for the claim that this accident was chiefly due to the negligence of the engineer, who, knowing of the defect, and the tendency of the engine to respond to the brake slowly, waited until he was near the car before bringing his engine under control; and it might be contended that a sound pushbar would have met the same fate if subjected to the same strain, in which case the injury could not be said to have resulted from or to have been caused by the defect. But, manifestly, all of these are questions for the jury, unless we can say that the undisputed evidence conclusively establishes one or another of the propositions. We cannot say that it was or was not negligence to make the trip with the defective pushbar, nor would we be justified in saying that a sound bar would certainly have been crushed. And if we might say that five or six miles an hour is not a prudent rate of speed at which to make a coupling, and that, in running the engine, the engineer was a fellow-servant with the brakeman, still the degree of caution required by his kowledge of the cracked pushbar, and whether the failure of the engine to answer the brake in time was due to his negligence, were for the jury to settle. If we could say that the fickleness of this engine was such as to make the engineer's delay in applying the brake negligence, we should still have to decide whether the inertia of the train was not sufficient to break the pushbar if a coupling had been made with ordinary prudence. There would also arise the further questions whether an engine so given to disregarding the brake as to make an approach negligent was not an unsafe machine, and whether the brakeman was aware of the extent of the uncertainty of its proper action, and therefore took the risks arising therefrom.

The court instructed the jury that if they should find that the injury did not result from the defective pushbar, but was due to the speed and force of the engine, the plaintiff could not recover. This was as favorable instruction as the defendant was entitled to upon this subject, the rule being that, while an intervening cause precludes

recovery, concurring negligence does not. If the negligent use of the engine alone caused the injury, that was the intervening cause, and plaintiff could not recover against the defendant; his only right of action would be against the engineer. If, however, it appeared that both the negligent use of the engine and the defective pushbar were concurrent causes, he might have a right of action against either or both. This was substantially said to the jury. Bailey, Mast. Liab. 439, and cases cited; Id. 443. See, also, for a discussion of an analogous question, *Selleck* v. *Railway Co.*, 93 Mich. 375.

It remains to discuss the question of contributory negligence. It is said by counsel for the defendant that, by riding two miles upon the pilot, the plaintiff was guilty of contributory negligence, and the case of *Glover* v. *Scotten*, 82 Mich. 369, is cited in support of the proposition. It is not clear that the ride upon the pilot did in itself contribute to the injury, but that it was his getting down upon the crossbar, and attempting to make the coupling. The witnesses agree that, had he been on the ground, it would not have been prudent for him to attempt to make the coupling without taking the position upon the crossbar that he did take. The only way that the ride upon the pilot can be connected with the accident is to say that, had he been upon the ground, he would not have attempted to make the coupling, while he could not safely do anything else, inasmuch as he was upon the pilot. The difficulty with this theory is twofold: *First*, we cannot determine that his safety required him to attempt a dangerous coupling as an only alternative to being injured, or that he could not have jumped off or otherwise avoided injury if he was in danger; and, *second*, we cannot say that he might not prudently have attempted this coupling by getting onto the crossbar from the ground. If so, his ride for two miles on the pilot was unimportant, for it would have made no difference whether he got into the place of danger (which was the crossbar of the pilot) from the ground, or a place of safety

upon the engine.   Until it appears that he was in danger, and could not reasonably expect to escape from the pilot, there is no room for the claim that riding on the pilot was the proximate cause of the injury.   These matters depend upon the questions of fact, prominent among which are the strength of the pushbar if sound, and the reasonable expectation of a decrease in speed in the last 80 feet covered by the engine.   It was therefore proper to leave the question of contributory negligence to the jury.   *Baltzer* v. *Railroad Co.*, 89 Wis. 257.   The condition of the air brakes, the nature of the difficulty, the plaintiff's knowledge concerning them, and whether it was negligence to expect them to work, we conceive to be questions for the jury, in connection with his situation upon the pilot, his ability to get out of harm's way if necessary, and his right to expect the bar to stand the shock.

The circuit court excluded testimony that the plaintiff might have gone back from Gladwin to the train in the cab, instead of upon the pilot.   It already appeared that he did ride *to* Gladwin in the cab, making it an established proposition that he could have thus returned.   The court, in ruling upon this, said that it was unimportant whether he could have been accommodated in the cab, for he thought he was rightfully where he was, *i. e.*, upon the crossbar.   An exception being asked, the court replied: "Certainly, or if they wish to contest the practice of standing on the pilot to make this connection, why, I do not wish to preclude you or them from showing it; but, as to riding in the engine in that place, I don't think it is important.   He had to get on there anyway."   We think no harm was done by this ruling or remark as qualified.   It gave the jury to understand that the question of negligence in getting upon the crossbar was open, but that riding upon the pilot for two miles was not the proximate cause.   If it were, it could not be held that a want of room in the cab justified plaintiff in taking a known place of danger.

We cannot say that the opinion of the engineer upon

the ability of that pushbar, if sound, to withstand the shock, was not admissible. It would be difficult to suggest a method of proving suc 1 fact if those familiar with the machine, and who had used it, could not give the jury the benefit of their experience and knowledge, which, of necessity, would take the shape of an opinion.

We discover no error in the record, and the judgment will therefore be affirmed.

Grant, J. (dissenting). I have expressed my views of the question of fellow-servant, involved in this case, in Anderson v. Railroad Co., 107 Mich. 591. Upon the other questions I express no opinion.

Montgomery, J. I concur in affirming the judgment. The duty which the master owes to provide a reasonably safe place to work and machinery in a reasonably safe condition is not discharged for all time by providing machinery or premises safe in the first instance. Van Dusen v. Letellier, 78 Mich. 492. This duty cannot be discharged by providing for an inspection by a fellow-servant, for wherever the duty of inspection, for the purpose of ascertaining whether there be a necessity to repair, or whether the machinery is in safe condition, exists, it is the master's duty. The duty of diligence in maintaining the machinery in a reasonably safe condition necessarily involves the duty of the master to take such reasonable measures to inform himself from time to time of the condition of the machinery as common prudence dictates. In the present case no such provision was made, except through such inspection as was given by the engineer of the train; and I think it may be said that, while every accident to machinery when in use will not render the master liable for its continued employment by a fellow-servant while in such crippled condition, yet where, as in this case, the defect is discovered by the person intrusted by the master with the duty of supervision, and the discovery of the defect is made at such a time as

would have enabled the master's representative to repair the defect before entering upon the journey, or to have abandoned the trip, it is a fair question for the jury whether such representative is in such relation to the master that notice to him is notice to the master. The fact that the engineer and brakeman were employed on the same train is not necessarily decisive. If the engineer was in fact intrusted with the duty of supervision for the purpose of seeing that the engine was kept in reasonably safe condition, he was intrusted with a duty which the master owed, and which, in this case, it could perform only through agents, and which, it would appear, it had imposed upon no other agent; and, under these circumstances, it is no hardship to say that the agent of its own selection must be held to be its representative.

McGrath, C. J., and Long, J., concurred with Montgomery, J.