151  687
f151 ¹693

CHARRON v. UNION CARBIDE CO.

1. MASTER AND SERVANT — INJURIES TO SERVANT — APPLIANCES AND PLACES TO WORK — DUTY OF MASTER — ANTICIPATION OF ACCIDENT.

In an action for the death of a servant caused by an explosion of acetylene gas in a manufactory of calcium carbide, evidence examined, and *held*, to show conclusively that defendant manufacturer knew that a combination of water, carbide, air and a spark would produce an explosion, and that defendant was also chargeable with knowledge that there was carbide in the pit of an elevator in its factory; that the floor was so constructed that water falling upon it would reach the pit; and that sparks were produced in the elevator, so that an explosion following the uncoupling of a steam pipe containing a quantity of water which ran upon the floor was not an accident which could not have been anticipated, but was one which defendant should have anticipated and used every precaution to prevent.

2. SAME—DEGREE OF CARE REQUIRED.

The degree of care required of a master is measured by the danger known to him.

3. SAME—CONTRIBUTORY NEGLIGENCE.

A foreman of the packing department in a calcium carbide manufactory was not guilty of contributory negligence in continuing at his work while a steam fitter, under control of another superior, uncoupled a steam pipe which discharged water upon carbide in an elevator pit, causing an explosion, the foreman having no warning of danger.

4. SAME—ASSUMPTION OF RISK.

Neither did he assume the risk of injury from that source, it not being an ordinary risk which the employés in other departments assumed.

5. SAME—FELLOW-SERVANTS—DELEGABLE DUTIES.

The duty of ascertaining whether there was water in the pipe, and causing it to be drained before uncoupling it, was one which devolved absolutely upon defendant, and was nondelegable, whence the steam fitter directed to remove the pipe, was not, as to that duty, the fellow-servant of the foreman in the packing department, injured by the explosion which followed the removal.

Error to Chippewa; Steere, J. Submitted January 17, 1908. (Docket No. 84.) Decided March 31, 1908.

Case by Barthelmy Charron, administrator of the estate of Michael J. Moriarity, deceased, against the Union Carbide Company for the negligent killing of plaintiff's intestate. There was judgment for plaintiff, and defend-' ant brings error. Affirmed.

*Fred L. Vandeveer* (*Oren, Webster & Carleton,* of counsel), for appellant.

*F. T. McDonald,* for appellee.

The defendant is engaged in the manufacture of calcium carbide, a commercial product used in the generation of acetylene gas, a brilliant illuminant, extensively used in the various forms of commercial lighting. Defendant's plant is an extensive one, consisting of two very large buildings and several smaller ones. A minute description of the machinery and the method of manufacture is unnecessary.

In one of these large buildings was located the grinding and packing department. This was, the main carbide building, was 300 feet long and 80 feet wide, and was heated with steam. In it were screen cases and elevators. Steam pipes ran along the wall of the building, with radiators appropriately arranged to secure•the requisite heat. Along the north wall of this room was located the main return pipe of the various steam radiators which were located along said wall. This pipe was located near the top of the conveyor, which had been removed, and could not be raised and reset at the angle proposed, unless the steam pipe was raised. One William Gunyon was the regularly employed steam fitter and plumber of the defendant. He had been directed by his foreman to make the requisite change in the pipe. This foreman, Robert P. Byers, had been instructed by the assistant superintendent, Mr. Scales, to have this change made. Mr. Gun-

yon was assisted in the work by one Matheson, an iron worker and boiler maker, and an employé of the company.

At the bottom or pit of one of the elevators, No. 33, there was carbide. When water or considerable dampness comes in contact with the carbide it generates a dangerous gas, and when mixed with air, a spark would ignite it and cause a severe explosion. The defendant knew this danger, and consequently precautions were taken to keep the room dry and prevent water or moisture reaching the carbide. The defendant's employés, at least those who had been long in its employ and directly engaged in the manufacture, also understood the liability to explosion. When the mill is in operation sparks are formed in the elevators. This return pipe was provided with a valve by which it could easily be ascertained whether there was water in the pipe, and by which if there was it could be drawn out. Neither Gunyon nor his foreman, nor the superintendent who ordered the work done, took steps to ascertain whether there was water in the pipe. Neither did the superintendent or the foreman caution Mr. Gunyon to see that the water was removed from the pipe, or inform him of the danger if water escaped therefrom upon the floor. Gunyon was not a witness, and no explanation was given for his conduct in breaking the pipe without removing the water. Mr. Matheson testified that Mr. Gunyon asked him if he (witness) thought there was any water in the pipe. Witness replied: "I told him I did not know anything about it, it was not my affair." When the pipe was broken the water ran out. Mr. Matheson caught up a can and succeeded in catching and throwing out of the window a part of it. The other ran upon the floor into the pit of elevator 33, where there was carbide. An explosion immediately followed, killing plaintiff's decedent, Mr. Moriarity. Mr. Moriarity was foreman of the packing department. He was engaged in working at the elevator when the explosion occurred. He had no control over Mr. Gunyon or his work.

The negligence charged is that the defendant "negligently, carelessly, and unskillfully broke and uncoupled the steam pipe or elbow, then and there being, without first having inspected the same to ascertain if there was water therein, and without any warning to plaintiff's intestate of danger, so that he might seek a place of safety."

At the conclusion of the plaintiff's case defendant's counsel moved the court to direct a verdict for the defendant, because,—

(1) Gunyon and Moriarity were fellow-servants.
(2) The accident could not have been anticipated.
(3) Moriarity was guilty of contributory negligence.
(4) The risk was assumed.

The motion was denied, and the case submitted to the jury on the plaintiff's evidence, the defendant offering none. The jury rendered a verdict for the plaintiff.

GRANT, C. J. (*after stating the facts*). 1. The evidence conclusively shows that the defendant knew that a combination of water, carbide, air, and a spark would produce an explosion. It was its duty to take every precaution possible to avoid such a condition. The defendant was also chargeable with knowledge that there was carbide in the pit of the elevator; that the floor was so constructed that water falling upon it would reach the pit; that sparks were produced in the elevator, and that a combination of these was likely to produce disastrous consequences. So far, therefore, from this being an accident which could not have been anticipated, it was one that the company should have anticipated and used every precaution to prevent. *Geller* v. *Briscoe Manfg. Co.*, 136 Mich. 330. The degree of care required is measured by the danger known to the master.

2. There was no evidence that Moriarity was guilty of contributory negligence. His work belonged entirely to another department of the business from that of Mr. Gunyon. He was foreman of the packing department. Gunyon was not subject to his control. There is no evidence

that plaintiff knew that this work was going on, and we may reasonably infer that it was being done out of his sight. But had he known what Gunyon was doing, he would have no occasion to anticipate danger. There is nothing to indicate that he had any warning of the danger. Under these circumstances he was not only guilty of no negligence, he did not assume the risk. It was not an ordinary risk which the employés in other departments assumed.

3. The only question of doubt is whether Gunyon and Moriarity were fellow-servants. Gunyon and Moriarity were employed in departments of the defendant's business entirely separate and distinct. Gunyon is not supposed, and is not shown, to have had knowledge of Mr. Moriarity's position or work. He was simply a steam fitter and plumber. He had nothing to do with the manufacture of the product. There was nothing in his position as a steam fitter and plumber which would cause him to know the conditions under which an explosion might occur. There is no tangible evidence that he did know. Why he was not called as a witness does not appear. Confessedly the defendant's superintendents did not inform him. They assumed that he knew it, and knew that the water should be drawn from the pipe, if there was any there, before he could safely do his work. The learned counsel for the defendant say in their brief that if defendant had called in an outside steam fitter or plumber it would have been its duty to tell such man the danger of water coming in contact with the carbide, and the necessity of draining the pipe before breaking it. Not only would that have been its duty, but the duty would still have remained to see that it was properly done. It was no less its duty to know, not to infer, that Mr. Gunyon, its employé, had that knowledge. This defendant cannot excuse itself upon the ground stated by its counsel, "that Gunyon would presumably have become acquainted with the purposes for which carbide was manufactured, and that moisture and water coming in contact with it would generate at

least an inflammable gas." Mr. Gunyon may have been a competent steam fitter and plumber without having any knowledge whatever essential to his doing the work which he was instructed to do properly and safely. The duty of defendant was the same with Gunyon in this work that it would have been with an outside plumber.

The superintendent and foreman both knew the danger and the necessity of preventing it. Either could in a few moments have turned the valve at the proper place and removed the water. Common prudence would have required them to do so. They knew that their employés, working in the plant, manufacturing the product, would have no knowledge of any danger and no occasion to guard against it. It was not one of the ordinary pieces of work about which workmen might be supposed to know. It furthermore appears from the evidence that these pipes are not used in the summer time, and had not been used during that summer prior to the accident, which happened on August 16th. There would be much force in saying that Mr. Gunyon knew this and would have no occasion to suppose that the pipe would be full of water. It was the duty of the master to know whether there was water in the pipe. It was not in condition for the performance of the work which Gunyon was instructed to do, as long as there was water in it.

We are of the opinion that the duty to cause the water to be removed from the pipe before instructing the plumber to do the work, which necessitated breaking the pipe, devolved absolutely upon the master and was non-delegable. This case is within the rule of the following cases: *Northern Pacific R. Co.* v. *Herbert*, 116 U. S. 642; *Ford* v. *Railroad Co.*, 110 Mass. 240; *Balhoff* v. *Railroad Co.*, 106 Mich. 606; *McDonald* v. *Railroad Co.*, 108 Mich. 7.

The judgment is affirmed.

BLAIR, MOORE, CARPENTER, and MCALVAY, JJ., concurred.