COURTOIS *v.* KING PAPER CO.

1. MASTER AND SERVANT—ASSUMPTION OF RISK—NEGLIGENCE.

   In a personal injury case brought against his employer by a servant who was employed in a paper mill at a washing tank containing revolving paddles, and who was injured by the starting of the machinery while he was necessarily inside the tank in the course of his work, the court properly refused to direct a verdict for defendant on the testimony of defendant's millwrights, disputed by plaintiff, that they warned him that they were about to repair the machinery and not to enter the tank: the doctrine that ordinary risks are assumed had no application to the action, for the reason that the risk was not ordinary.

2. SAME—FELLOW-SERVANTS—REPAIRING MACHINERY.

   Where plaintiff had reported a loose or defective belt to defendant's millwright who promised to repair it, and sent his assistants to do the work, they were not fellow-servants of plaintiff, but represented the master in performing such work. OSTRANDER, J., dissenting.

3. SAME—CONTRIBUTORY NEGLIGENCE—CHOICE OF MORE DANGEROUS WAY.

   It was not error to hold that the question of contributory negligence was for the jury, where plaintiff went into the tank in the performance of his duties, by means of a ladder provided by defendant for that purpose, although he might have done the work less expeditiously by using a pole and hook, and where he had taken the precaution to throw off the belt and tie the lever so the power could not be applied while he was inside.

Error to Kalamazoo; Knappen, J. Submitted January 24, 1912. (Docket No. 24.) Decided October 7, 1912.

Case by Alfred H. Courtois against the King Paper Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Fred L. Vandeveer* and *E. M. Irish*, for appellant.

*Jackson & Fitzgerald*, for appellee.

McALVAY, J. The plaintiff in this case recovered judgment against defendant for damages on account of injuries received by him while employed in the paper mill of defendant at Kalamazoo, which injuries are claimed by him to have been caused by the negligence of defendant. His employment was that of operating certain machines known as "washers," in which the pulp used in manufacturing paper was washed. A washer consists of a tank 12 feet in diameter and 8 feet in depth. In this tank, attached to a central upright shaft, were arms or paddles, which, when power was applied, revolved and stirred up the pulp during the process of washing. The pulp was drawn out of the tank by an opening in the bottom. The power was furnished to the upright shaft in the tank by means of a counterline shaft and a belt connecting the two shafts, running over pulleys on each shaft. The washer was equipped with a tight and loose pulley, and by shifting the belt to the loose pulley the power was removed. After the washer was emptied, the trap in the bottom would be closed before filling the machine with pulp again. It was the duty of plaintiff, after the contents of washer had passed through the trap, to see that everything was removed from about the opening, so that it would close perfectly tight. For the purpose of doing this, formerly a pole with a hook on it was used to pick out obstructions, but this was found to take too much time, and a ladder was provided for the use of plaintiff to go down into the tank for this purpose.

Plaintiff had been employed by defendant about three months operating two of these washers in defendant's mill, and had worked in and about mills and factories, among machinery, for four years. Some time before his injury, the belt which furnished the power to the washer in question became loose and plaintiff reported this fact to the head millwright of defendant, who promised that it would be fixed. On the day in question, the millwright sent two assistants for that purpose, who notified plaintiff why they came. Plaintiff at the time was in the perform-

ance of his work at the washer in question, emptying it, and, when it was emptied, he found he could not close the trap by pulling the lever. He then took the ladder, put it into the tank, and went down to clean the opening by taking out the strings that were in it. Before he started to empty the washer, he had thrown off the belt by the shifter used for that purpose, and, as was his duty, tied the shifter down so that the belt could not be shifted to the tight pulley, and thus start the machine revolving while he was in it. While plaintiff was so employed in the bottom of the washer, the millwrights proceeded to take the belt from the machine, and released it from the shifter where it was held on the loose pulley, and shifted it to the tight pulley, which applied the power to this washer, causing the paddles to revolve, and thereby injured plaintiff. There is a dispute in the testimony between plaintiff and the two millwrights as to what was said between the parties at the washer when they came there; defendant's claim being that they told plaintiff to keep out of the washer. This is denied by plaintiff. There is other disputed testimony in the case, which, if necessary, will be considered later.

At the close of plaintiff's case, defendant moved for a directed verdict in its favor, which was denied. The question was again raised in the requests to charge, which was refused. The case was submitted to the jury and a verdict was given in favor of plaintiff, upon which judgment was entered.

The errors assigned and relied on in the case by appellant are that the court erred (1) in not holding and charging that the plaintiff assumed the risk; (2) that the assistant millwrights were his fellow-servants; and (3) that plaintiff was guilty of contributory negligence. These errors are based upon the refusal of the court to direct a verdict for defendant and refusing certain requests of defendant to charge, without modification, and upon certain portions of the charge as given by the court.

The general doctrine that an employé assumes all the

ordinary risks incident to his employment evidently is not what defendant invokes in his contention that plaintiff in this case assumed the risk of injury. This was not in any aspect of the case an ordinary risk, usual and incident to the employment of plaintiff. The only admissible use of the words "assumed risk" in this connection, it appears to us, would be, provided defendant's theory is accepted, that plaintiff, having been warned and given notice of danger in case he went into the tank, might be said to have assumed the risk of the injury which might follow from such act. In similar cases in the decisions in this court and others this use of the term "assumed risk" has become common. The contention of the defendant is that the court refused to charge that plaintiff assumed this risk, and that in the charge given by the court the question was entirely overlooked. The record does not sustain this contention. The charge of the court must be taken as a whole. In portions of it, not excepted to, the court clearly and correctly charged the jury upon this question, as follows:

"If you find that the plaintiff was told by De Vries to keep away from the vat, or warned in any form of words so that the plaintiff understood it, to keep away from the machine while the belt was being fixed, then the verdict of the jury must be no cause of action. If the jury find that the plaintiff, Courtois, had worked around this machine for several months, and was acquainted with the pulleys in question, and that he knew the counterline shaft was in motion, and that the millwrights were about to fix the belt and start the machinery when he entered the washer machine, then he assumed the risk, and the verdict of the jury should be no cause of action, if he had knowledge of those facts before he entered the vat or had notice or had reason to believe it. If the jury find that the plaintiff, Courtois, had worked for several months around this machine, and was familiar with it, and had been in the habit of starting it and stopping it by means of the tight and loose pulleys, and that a man of ordinary intelligence should have known that there was danger of the machine starting while the millwrights were at work fixing the belt and when he entered the washing machine,

then the verdict should be no cause of action. If the jury find that a man of ordinary prudence and caution, of the experience that Courtois testifies that he had had, would not have gone into the vat under the circumstances, then they should find that he was guilty of contributory negligence, and that he assumed the risk, and their verdict should be no cause of action. If the plaintiff knew, or had good reason to know, that the act of going into the vat while repairs were being made was dangerous, then it was not necessary for any one to warn him of that danger, for it would simply be telling him what he already knew. It is not essential that an employer should warn a servant of danger that the servant himself must appreciate."

It is apparent that defendant's contention is not tenable.

The fellow-servant doctrine is also invoked in this case, upon the theory, of course, that the two assistant millwrights were fellow-servants with plaintiff, and for their negligence defendant cannot be made liable. The record shows that the loose belt had been reported to the millwright. No question is made but what this act on the part of plaintiff was a proper and necessary one, in order to protect himself. In discussing the application of the fellow-servant doctrine, this court has said:

"We have often held that the question whether one is a fellow-servant or not depends upon the nature of the act. If it is one which it is the duty of the master to do, like keeping a machine in repair, the master is responsible for injuries resulting from negligence therein." *Randa* v. *Screw Works*, 134 Mich. 343, 346 (96 N. W. 454, 455).

The duty to repair and to keep the place and appliances used in and about his business reasonably safe rested upon the defendant. Such duty is a nondelegable one. The performance of the duty in this case was undertaken by the head millwright, who sent his assistants to do the work. In performing this work they represented the master, and could not be fellow-servants with the plaintiff. If the injury was caused by the negligence of these repairers, it was the negligence of the principal. *Morton* v. *Railroad Co.*, 81 Mich. 423 (46 N. W. 111); *McDon-*

*ald* v. *Railroad Co.*, 108 Mich. 7 (65 N. W. 597); *Potvin* v. *Shipbuilding Co.*, 156 Mich. 201 (120 N. W. 613); *Charron* v. *Carbide Co.*, 151 Mich. 687 (115 N. W. 718). The court was not in error in refusing to charge that plaintiff could not recover, because the negligence, if any, was the negligence of fellow-servants, and correctly charged that the assistant millwrights represented defendant.

Upon the question of contributory negligence, defendant contends that it was such negligence for the plaintiff to go down into the tank when he knew the millwrights were handling the pulley, that he was an experienced man, acquainted with this machinery, and that another appliance, in the shape of a hook, could have been used by him with comparative safety. Upon these propositions the evidence for the plaintiff shows that he was in the usual performance of his duties; that before the millwrights came he had shut off the power and tied the lever so that it could not be applied, except by some one releasing it, making the place absolutely safe for going into the tank to clear the trap; that the tank was already being emptied, and that he continued in the usual performance of his duties, going into the tank by the use of the ladder provided by defendant for that purpose because it was the most expeditious way to do so. And it also appears that in removing the belt the millwrights threw it into the driving pulley of the washer in attempting to take it off, instead of, as might have been done, taking it off from the loose pulley, and they testified that this was done because it was more convenient. Under this same claim of contributory negligence of the plaintiff, defendant urges that he (plaintiff) was warned by the millwrights not to go into the tank while they were at work. That such warning was given is denied by plaintiff, and this was a question of fact. The court refused to charge that the plaintiff was guilty of contributory negligence, but left these disputed questions of fact upon that question, under

proper instructions, to the jury. No error was committed by such disposition of the question.

The error assigned upon the denial of the motion to direct a verdict for defendant being founded upon a view of the principal propositions opposite to the determination of this court thereon, it is not necessary to further consider them. The exceptions to the charge of the court are all covered by the propositions already decided contrary to the contentions of the defendant.

We find no error in the case. The judgment of the circuit court is affirmed.

MOORE, C. J., and STEERE, BROOKE, and STONE, JJ., concurred with McALVAY, J.

OSTRANDER, J. I am not satisfied that plaintiff was injured as a result of negligence which can be charged to the master or principal.