## HAZZARD *v.* CONSOLIDATED COAL CO.

1. MASTER AND SERVANT — NEGLIGENCE — MINES — SAFE PLACE — ELECTRICITY—UNINSULATED WIRES.

   Plaintiff, who was employed in defendant's mine as a loader and had started to leave the mine through a passageway in which was a track for the hauling of cars of coal, suddenly encountered a team and car; somewhat startled by the encounter he stepped to the south side of the track and came in contact with an uninsulated portion of a wire carrying an electric current, received a shock and fell in the path of the car: he suffered injuries for which he commenced an action. Defendant's electrician testified that because of the pressure of other work he had been unable to complete the work of protecting the wires at this point with boards as the remaining electrical wiring was protected. *Held*, that the question of defendant's negligence presented an issue for the jury.

2. SAME—FELLOW-SERVANT.

   Failure of the electrician to cover the wires with protecting boards at this place was the negligence of an *alter ego* of the employer, who could not escape liability under the fellow-servant rule, notwithstanding that he was supplied with sufficient boards and materials to perform the work.

3. SAME—TEMPORARY PLACE.

Nor was the place a temporary one in the process of construction and to be made safe so as to relieve the defendant of liability to provide for the safety of its employees.

4. SAME—CONTRIBUTORY NEGLIGENCE—ADOPTING MORE DANGEROUS OF TWO METHODS.

It could not be found as matter of law that the plaintiff was chargeable with contributory negligence for turning to the dangerous side of the track in the sudden excitement of unexpectedly meeting the car and team, although the opposite side was safe, nor could the court say that defendant, not being responsible for his fright, was not responsible for its consequences.

5. SAME—DUE CARE—DIRECTING VERDICT.

The issues whether the plaintiff should have seen or heard the approaching vehicle sooner, whether he should have waited until the current was turned off before he started to leave, and whether he should have used another passageway, were properly left as questions of fact for the jury.

6. SAME—ASSUMED RISK.

Where plaintiff testified that he did not know of the gap in the protection for the wires, the question whether the danger was obvious and should have been known to him depended on the opportunity that he had previously had for observing the situation, the distance thereof from a light, and whether the cap light carried by him was sufficient to disclose the conditions and surrounding circumstances, and was for the jury; he assumed only the risks of which he knew or ought to have known.

Error to Saginaw; Kendrick, J. Submitted November 26, 1913. (Docket No. 32.) Decided December 19, 1914.

Case by Robert Hazzard against the Consolidated Coal Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Humphrey, Grant & Humphrey,* for appellant.

*Miles J. Purcell* and *Fred L. Travers,* for appellee.

BIRD, J.   In October, 1911, the defendant operated the Shiawassee coal mine, in Saginaw county. Electric currents were conveyed by means of wires from the surface into the mine and along the passageways to the mining machinery, lights, and pumps. The wires were fastened on the side wall near the ceiling of the passageways. The passageway leading from the shaft to the point of mining was nearly a mile in length, was about 5 feet wide, and 5 feet in height. Down this passage a track was laid, over which cars filled with coal were hauled to the shaft. Mules were used to haul the cars from the point of loading for about 600 feet, where they were then taken by the motor to the shaft. In going to and from their work, the men working in the mine went through this passageway. On the afternoon of October 12th the plaintiff, who was doing the work of a loader, having finished his work, started for the shaft through this passageway. He had not gone far, when he suddenly came upon a mule team returning with empty cars, and, being somewhat startled, he stepped off the track to allow them to pass. The narrowness of the passageway compelled him to hug the side wall, and in so doing his head came in contact with a section of the electric wire which had no insulation, with the result that he received a shock, and was thereby thrown forward onto the mules and in front of the moving cars, and injured.

The negligence complained of and relied upon was the failure of defendant to furnish him a safe place in which to work, in that it failed to insulate its wires at the point where he came in contact with them. Judgment passed for the plaintiff, and defendant assigns several errors thereon. The assignments of error raise the questions:

(1) Whether there was any actionable negligence upon the part of the defendant.

(2) Whether plaintiff was guilty of contributory negligence.

(3) Whether the injury was within the risk which plaintiff assumed by his contract of employment.

1. The relation of employer and employee, which existed between the plaintiff and defendant, raised a legal duty upon the part of the defendant to furnish plaintiff with a reasonably safe place in which to work, and this duty carried with it the obligation to see that the passageway through the mine leading to and from plaintiff's work was reasonably safe. It is charged that defendant failed in this duty because it failed to insulate the wires at the point where plaintiff came in contact with them. It appears to have been admitted upon the trial that at that point there was a gap in the boards which afforded protection against the wires. The assistant electrician testified it was a part of his duty to supply the gap, but that he had failed to do so by reason of the pressure of work elsewhere. The defendant caused the wires to be placed in the passageway. It recognized the fact that they were a dangerous agency, by adopting a policy of covering them. It also knew that the men traveled the passageway in going to and from their work. These facts, with other facts shown, were sufficient to carry the question of defendant's negligence to the jury. But it is argued that the duty of covering the wires was delegated to the electrician, and that, as the proofs showed, he had an ample supply of boards to cover them, his failure to do so was his fault—the fault of a fellow-servant of plaintiff—and not the fault of the defendant. It was within the defendant's right to delegate the authority to the electrician, but it could not do so in such a manner as to relieve itself of liability, because the safety of a "permanent place" was involved. *Van Dusen* v. *Letellier*, 78 Mich. 492 (44 N. W. 572) ; *Brown* v. *Gilchrist*, 80

Mich. 56 (45 N. W. 82, 20 Am. St. Rep. 496); Mc-
Donald v. Railroad Co., 132 Mich. 372 (93 N. W. 1041,
102 Am. St. Rep. 426); Charron v. Carbide Co., 151
Mich. 687 (115 N. W. 718); Danula v. Mining Co.,
166 Mich. 350 (130 N. W. 604).

2. Several reasons are assigned why plaintiff was
guilty of contributory negligence as a matter of law.
One of these reasons is that plaintiff should have
stepped to the north side of the track, instead of the
south side, to permit the mules to pass, because he
was aware that on the north side there was more room
and no wires. The plaintiff testified that he came upon
the mules so suddenly that he became excited, and he
appears to have followed his first impulse to avoid
them by stepping to the south side. Recognizing, as
we do, that one in a startled moment is not always able
to exercise his best judgment in behalf of his own
safety, we cannot say as a matter of law that he was
guilty of contributory negligence. His conduct on that
occasion, with all the attendant circumstances, must
be referred to the usual test, namely, whether he did
that thing which the ordinarily prudent and careful
man would have done under similar circumstances.

It is further urged in this connection that, inasmuch
as defendant was not responsible for plaintiff's fright,
it is not liable for the consequences. Had plaintiff
stepped aside and suffered injury solely by reason of
the narrowness of the passageway, this argument
would have more force. The position of plaintiff,
however, is that, notwithstanding his fright and the
proximity of the car to the side wall, he would have
escaped injury, had he not come in contact with the
exposed wire. The uncovered wire was counted upon
as being the proximate cause of his injuries.

The further questions as to whether, in the exercise
of ordinary care, plaintiff should have seen and heard
the mules sooner, whether he should have refrained

from leaving the mine until the current was turned off, and whether he should have used another passageway, were questions which were all within the province of the jury, and the trial court was in no error in submitting them for their consideration.

3. Did plaintiff assume the risk? The risks which plaintiff assumed when he became an employee of defendant were those of which he actually knew, or of which he ought to have known. *Balhoff* v. *Railroad Co.,* 106 Mich. 606 (65 N. W. 592); *Bradburn* v. *Railroad Co.,* 134 Mich. 575 (96 N. W. 929). The plaintiff gave evidence that he was not aware of the gap in the insulation of the wire. As to whether the danger was obvious, and therefore should have been known to him, would depend upon the opportunity he had had for observing it, whether it was near or far from one of the 16-candle incandescent lights distributed every 150 feet through the passageway, whether the light carried on his cap would enable him to observe it, and whether his failure to observe it was due to his inattention and indifference. These considerations made this question one for the jury.

We find no reversible error in the remaining assignments of error.

The judgment will be affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.