WATTS v. PERE MARQUETTE RAILROAD CO.

1. MASTER AND SERVANT—RULE REQUIRING WARNING TO BE GIVEN USERS OF MOTOR CARS NOT APPLICABLE TO SECTION MEN USING HAND-CARS.

A rule of a railroad company requiring extra and delayed regular trains to sound the whistle as per Rule 14-L when approaching curves and other obscure places to warn "section men, bridge men, and others operating motor cars," when construed in connection with Rule 14-L requiring the warning to be given to "section men and others operating motor cars," *held*, not to include section men working with hand-cars.[1]

[1]Master and Servant, 26 Cyc. p. 1163.
On abrogation of defense of assumption of risk by Federal employers' liability act, see notes in 47 L. R. A. (N. S.) 62; L. R. A. 1915C, 69.

2. SAME—NEGLIGENCE—DISCOVERED NEGLIGENCE RULE NOT APPLI-
   CABLE IN ABSENCE OF EVIDENCE THAT ACCIDENT COULD HAVE
   BEEN AVERTED AFTER PERIL DISCOVERED.

> In an action against a railroad company under the Fed-
> eral employers' liability act (35 U. S. Stat. p. 65) for the
> death of one of its section men who was killed by a
> special freight train while attempting to remove a hand-
> car from the track, in the absence of evidence that the
> train could have been stopped in time to avert the accident
> after deceased's peril was discovered, the doctrine of dis-
> covered negligence is not applicable.[2]

McDONALD, C. J., and BIRD and MOORE, JJ., dissenting.

Error to Kent; Dunham (Major L.), J.     Submitted
October 23, 1924.     (Docket No. 134.)     Decided May
14, 1925.

Case by Valda L. Watts, administrator of the estate
of George A. Wilson, deceased, against the Pere
Marquette Railroad Company for the alleged negligent
killing of plaintiff's decedent.     Judgment for defend-
ant on a directed verdict.     Plaintiff brings error.
Affirmed.

*Cornelius Hoffius* and *Dorr Kuizema,* for appellant.

*Williams, Shields & Seaton* and *Ward & Straw-
hecker,* for appellee.

WIEST, J.     This suit was brought under the Federal
employers' liability act (35 U. S. Stat. p. 65), for a
dependent, to recover damages occasioned by the death
of George A. Wilson, a section hand in the employ
of defendant company.     Mr. Wilson was a section
workman of long experience and, the morning of
January 12, 1921, was engaged with two other section
men in distributing tie plates from a hand-car in a
curve cut, when a special freight train came into the
cut and struck the hand-car just as the workmen had
partly removed it from the track and as they jumped

---

[2]Master and Servant, 26 Cyc. p. 1229.

away, and Mr. Wilson who ran in the direction the train was going was struck by flying pieces of the smashed hand-car and injured and died March 27, 1921.   At the close of plaintiff's proofs the trial judge held no negligence had been shown and directed a verdict for defendant.

The case is here by writ of error, and in a broad way presents the question of whether defendant owed these section men the duty of giving warning by whistle of the approach of the train to the curve cut. There is no evidence the train crew had knowledge that the section crew were in the cut.   The section men had no knowledge the train was due at that time as it was a special freight.   Section men perform their work in places requiring constant watchfulness on their part; they know special trains are operated; they are aware of the schedule time of regular trains but have no means of knowing when special trains may appear beyond that of sight and hearing and a system of signals.   The company maintains a system of signals, a view of which was available from the bank of the cut and actually taken by Mr. Wilson who reported the block clear about three minutes before the accident.   The block signal would disclose a train within about two and, a half miles of the place of accident.

The accident happened about 8:30 o'clock of a "sharp, cold, clear, crisp morning" with some wind, and no snow on the ground.   At the trial plaintiff was permitted to plead the following rule of defendant company:

"Extra and delayed regular trains must sound the whistle as per rule 14-L when approaching curves and obscure places, and frequently during fogs and heavy snow storms, to warn section men, bridge men, and others operating motor cars."

This requires us to turn to Rule 14-L, which provided:

"Two long and two short blasts approaching public crossings at grade and approaching curves, as a warning to section men and others operating motor cars."

Does this apply only to section men and others operating motor cars or is it inclusive of section men working with hand-cars?

Plaintiff's counsel insist it is a rule of good railroading and, while the doctrine of *ejusdem generis* may apply to the last half of the rule, when there are fogs and heavy snow storms, requiring *frequent* whistling, "the first part of the rule requires whistling when approaching curves and obscure places, without regard to the class of the workman."   We do not think the rule was drawn to be so split; it provides for a warning under designated circumstances for the protection of a specified class.

Defendant's counsel say:

"As to the language, it is so plain that no argument is attempted to give meaning to the clause specifying the class of persons for whose protection the whistle is to be blown.   It is an arbitrary, strained and unnatural construction which attempts to disconnect the first part of the rule from the last—to apply the rule to 'curves and obscure places' and not to fogs and heavy snow storms."

Is there any incoherence in the language of the rule? We think not.   The question is not whether the rule should grant the same measure of protection by warning to all section men, operating motor cars or hand-cars, but whether it in terms limits its application to employees operating motor cars.   We may not be able to grasp the full sense of such a limitation, but if it is so limited we cannot extend its scope.   At first the writer was inclined to think the rule was inclusive of section men operating a hand-car, but, sensing the basis for this thought to be a humanitarian impulse rather than consideration of the restrictive terms of the rule, was led, upon reflection, to the opposite con-

clusion, and fortified therein by remembrance of the well established rule that section men are required to take care of themselves and can readily do so except when operating a motor car.    There exists a reason for giving this protection to employees while operating a motor car which does not carry to slow moving, comparatively noiseless and easily removable instrumentalities.    Motor cars are capable of high speed, bring employees quickly into danger zones, make considerable noise and are not easily removed from the track.    If the rule had merely designated the class to be given notice by whistle, as employees operating motor cars, there would be no thought of its being inclusive of section men operating hand-cars.    The designation in the rule of the class as section men and bridge men did not require the warning as to even them except in the operation of motor cars.    It must be held that the rule relates to section men and others *operating motor cars.*    This, of course, has nothing to do with discovery of peril of section men in time to adopt measures and adapt means to avoid injury to them.

This eliminates the company rule and brings us to the question of whether the evidence, considered in its most favorable aspect, shows negligence on the part of defendant.    The Federal act leaves the question of negligence of defendant to be determined in accordance with common-law rules.    It, therefore, must appear there was a duty owed the injured person and a violation of such duty resulting in the injury complained of.    What duty did defendant owe section men engaged in work requiring use of the railroad track out in the country?    Plaintiff insists on the right to notice of an approaching train when view thereof is cut off by reason of a curve in a deep cut. Defendant contends there exists no such duty; that section men, working on a railroad track over which trains are expected to pass with speed between

stations, owe it to themselves and to the company to watch out for trains and not to rely at all upon the giving of signals.   The question so presented is not new.   There runs through plaintiff's claim and argument the vein of the humanitarian doctrine, and while this is quite appealing in a broad sense, it overlooks the fact that this doctrine avails little unless it appears the peril of the section hand was discovered in season to have averted injury to him.   Such does not appear to be this case.   The train was discovered by the section men when about 600 feet away, and seeing it they tried to remove the hand-car.   Certainly the engineer was in no better position to determine that this could not be done than the men who were trying to do it, and besides, there is no evidence the train could have been stopped in time after peril of the section men was discovered.

Under the Federal employers' liability act the defense of assumption of risk remains as at common law  except in cases of violation of a Federal statute enacted for the safety of employees.   *Southern Railway Co.* v. *Crockett,* 234 U. S. 725 (34 Sup. Ct. 897).

4 Elliott on Railroads (3d Ed.), § 1862, states, with citation of numerous cases:

"Ordinarily section men or trackmen assume the risk incident to the running of trains, whether extra trains or trains running on schedule time.   Such employees are bound to know that regular trains may be delayed and pass at uncertain intervals and that wild or extra trains may be sent over the road and they assume the risk of danger therefrom, except in cases where by some act or conduct the employer has impliedly or expressly represented that no wild or extra trains shall imperil the safety of such employees.   It has also been held that the fact the train was running at an unusual rate of speed at the place of the injury and in violation of a city ordinance does not relieve a section man from the rule that such employees assume the risk of wild as well as regular trains running over the tracks at all times at any

rate of speed, without warning except from the noise of the train, and by the customary signals."

This court has had occasion to state the rule of assumed risk incident to section men working on railroad tracks. In *Barnhart* v. *Railroad Co.*, 188 Mich. 537, it was said of the work of section men:

'When plaintiff engaged in this line of work he knew that it was more or less hazardous by reason of the frequent operation of trains, and the law placed upon him the duty of exercising reasonable care to protect himself against injury. *Schaible* v. *Railway Co.*, 97 Mich. 318 (21 L. R. A. 660) ; *Aerkfetz* v. *Humphreys*, 145 U. S. 418 (12 Sup. Ct. 835) ; *Daly* v. *Railway Co.*, 105 Mich. 193; *Carlson* v. *Railroad Co.*, 120 Mich. 481."

See, also, *Tober* v. *Railroad Co.*, 210 Mich. 129; *Riccio* v. *Railroad Co.*, 189 Mass. 358 (75 N. E. 704) ; *Woods* v. *Railroad Co.* (Mo.), (187 S. W. 11).

The facts in the Missouri case closely parallel the facts in this case. We do not adopt the holding of the Missouri court with reference to contributory negligence in trying to remove the hand-car, for that question is not reached under the holding we make, and besides, under the Federal act, contributory negligence unless it equals defendant's negligence goes in mitigation of damages and does not defeat a right of action thereunder.

Plaintiff made no case. Judgment affirmed, with costs to defendant.

CLARK, SHARPE, STEERE, and FELLOWS, JJ., concurred with WIEST, J.

BIRD, J. (*dissenting*). I do not agree with the construction which Mr. Justice WIEST gives to the following rule of defendant:

"Extra and delayed regular trains must sound the whistle as per rule 14-L when approaching curves and obscure places, and frequently during fogs and

heavy snow storms, to warn section men, bridge men, and others operating motor cars."

He reads the rule as applying only to section men, bridge men, and others while using motor cars.   In other words, he reads it as though it had stated:

"To warn section men operating motor cars, to warn bridge men operating motor cars, and to warn others operating motor cars."

I do not so read it.   It appears to me to be a rule which applies to three distinct classes.   (1) To section men.   (2) To bridge men.   (3) To others operating motor cars.   Section men and bridge men working in obscure places and on curves in foggy weather need protection as much as a Western Union line man or a track inspector traveling on a motor car.   Their motor cars are more easily removed than a hand-car loaded with heavy tools.   If the construction of Mr. Justice Wiest be the proper one, then a section man riding on a hand-car is not protected, but if he were riding on the same kind of a car propelled by gasoline, he would be protected.   A man working on timbers of a bridge would not be protected, but if he were on a motor car bringing a timber to the bridge he would be, although if he were doing the same work with a hand-car he would not be protected. An employee operating a motor car has a full, continuous view of the track.   The view of one operating a hand-car is intermittent.   If either is to be preferred good sense would suggest that the hand-car operator should have the preference.

Plaintiff and his coworkers, on the morning in question, were distributing plates with a hand-car.   Had they been distributing steel plates with a motor driven car they would have been protected.   This construction does not appeal to me.   The foregoing considerations convince me that the construction given the rule by Mr. Justice Wiest was not intended by the framers

of it.    The rule appears to have been initiated by the company for the protection of its employees working or being in hazardous places, and the rule appears to include all the classes which are liable, and which have a right to be in those places.    If the engineer on the extra train failed to obey this rule then the company was guilty of negligence.    This question was one of fact and should have been submitted to the jury.    If there were any evidence that plaintiff's intestate was guilty of contributory negligence, that question should have been submitted to the jury.

For these reasons the judgment should be reversed and a new trial granted, with costs to plaintiff.

McDONALD, C. J., and MOORE, J., concurred with BIRD, J.