LEWIS v. PHELPS.

1. SEAMEN—MASTER AND SERVANT—FEDERAL MERCHANT MARINE ACT—NEGLIGENCE—COMMON-LAW RULES.

In order to recover damages under Federal merchant marine act (46 USCA, § 688) for employee's death, it must appear that death resulted, in whole or in part, from negligence of employer, and negligence must be determined in accordance with common-law rules applicable thereto.

As to duty of master to furnish safe place to work, see annotation in 26 L. R. A. 524; 41 L. R. A. 50; 25 L. R. A. (N. S.) 321; 28 L. R. A. (N. S.) 1267; 46 L. R. A. (N. S.) 769.

2. SAME—REASONABLY SAFE PLACE TO WORK.

    It was duty of employer's agent, instructing yacht engineer to put catboat in commission, to see that he had reasonably safe place in which to perform that service.

3. MASTER AND SERVANT—NEGLIGENCE—DUTY OF MASTER TO WARN SERVANT OF HIDDEN DANGERS.

    Where inexperienced servant is put to dangerous work, or is sent into dangerous place to work outside scope of his employment, it is master's duty to warn, instruct, and inform servant as to all dangers incident to said work which are not discoverable from ordinary observation by inexperienced person who would have no reason to anticipate danger.

4. SEAMEN—MASTER AND SERVANT—WARNING SERVANT OF DANGER OF FALLING OVERBOARD.

    Failure of employer's agent to warn yacht engineer, instructed to put catboat in commission, against danger of falling overboard while performing that service did not render master liable under Federal merchant marine act (46 USCA, § 688) for employee's death by drowning when he fell overboard; employee not being so inexperienced that it was master's duty to warn him of danger of falling overboard, which was as apparent to employee as to employer.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted October 13, 1931. (Docket No. 83, Calendar No. 35,942.) Decided January 4, 1932.

Case by Hattie Lewis, administratrix of the estate of Oscar D. Lewis, against George Harrison Phelps under the Federal merchant marine act of 1920, for damages alleged to be due to defendant's negligence. Verdict and judgment for plaintiff. Defendant appeals. Reversed, and judgment ordered entered for defendant.

*Clarence Milligan* (*Samuel D. Frankel,* of counsel), for plaintiff.

*Dykema, Jones & Wheat,* for defendant.

SHARPE, J. · Plaintiff's decedent was engaged in cleaning the outside of · the cabin of a catboat, anchored at each end in the Detroit river, in the forenoon of May 26, 1928. In the afternoon his body was found in the river. While no one saw the accident, it is apparent that he fell from the deck of the boat into the water and was drowned. This action is brought under· the Federal merchant marine act of 1920 (46 USCA, § 688), to recover the damages incident thereto. Plaintiff had verdict and judgment. The defendant has appealed. It is insisted on his behalf that no actionable negligence was proven.

The acts of negligence alleged in the declaration were failure to furnish the deceased with a safe place to work, failure to warn him of the hazardous nature of the work in which he was instructed to engage, and placing him at hazardous and dangerous work outside the scope of his employment.

During the summer of 1927 the deceased was employed by the defendant as an engineer on a power-driven yacht, approximately 100 feet. in length, owned by him. This yacht was stored in a boathouse along the river in the fall, which contained an apartment in which deceased and his wife lived during the winter. His duties were to overhaul the motors and look after the yacht. Defendant's son Harrison was given permission by his father to store a catboat, owned by him, in the boathouse. This boat was 21½ feet long, and 9 feet 3 inches wide, and was equipped with a mast and sail and also an auxiliary motor. There was nothing unusual in its construction.

In the spring of 1928, the defendant and his·son Harrison were abroad. Harrison, however, had given his brother Erländ permission to use. his boat, and there is proof that defendant's brother-in-law, William D. Laurie, who had charge of his business

in his absence, instructed the deceased to help Erland get the catboat in commission. After overhauling the motor, it was necessary to remove it from the boathouse to place the mast and sail thereon. This was done on May 25th, and the mast then placed in position. The boat was tied at one end to the dock on the river side of the boathouse by a bowline 4 or 5 feet in length, and at the other by a line about 20 feet long, fastened to the spiles on a government pier. Access to it was gained by pulling in the short line to the dock. The deck had a railing around it about 10 inches in height.

On the morning of the 26th, the plaintiff saw her husband, the deceased, place the sail on the mast and fasten the boom so that it could not swing from side to side. He then put on a pair of rubber boots, and, with water furnished by a hose from the boathouse, proceeded to wash the deck and the outside of the cabin. He was later missed, and his body found as above stated. She testified that when he got on the boat that morning it "waved around a bit," and that as he stepped around on it "It just bobbed around; kind of rocked."

Plaintiff called three experts, men familiar with the river at that place and with the use of catboats, who testified that the work in which the deceased was engaged was dangerous to one not having experience in handling such boats. There was proof that there was an off-shore breeze at the time, with a velocity of about 10 miles per hour; that the current of the river was about 4 miles per hour, and that the boat was tied near the landing dock of the ferry boats, which made frequent trips past it and produced a noticeable swell at that place.

The defendant testified: The crew of the yacht during the summer and fall of 1927 consisted of a

captain, an engineer (the deceased), and five other persons; that he hired the captain, and he the others; that three auxiliary boats were kept on the yacht. One, known as the "starboard launch," was about 20 feet in length and 5 feet in width; it had a four-cylinder motor, and a little shelter cabin, and was used for carrying passengers to and from the shore. The deceased had charge of it when in use, and at times washed the deck and cabin when it was lying in the river. There was another boat with a four-cylinder motor, called the "port launch," and another, an open boat, about 15 feet long, also equipped with a four-cylinder motor, used by the crew in going to and from the shore. This was in daily use, and was handled by the deceased. His testimony is in no way disputed.

While the action is brought under the Federal act above referred to, it is conceded that, in order for the plaintiff to recover, it must appear that the death of Lewis resulted, in whole or in part, from the negligence of the defendant or his agent, Mr. Laurie, and that this question must be determined in accordance with common-law rules applicable thereto. *Watts* v. *Railroad Co.*, 231 Mich. 40, 44 (24 N. C. C. A. 493).

When Lewis was relieved of his duties as engineer of the yacht and instructed to assist in putting the catboat in commission, it was the duty of Laurie, if it be assumed that he was acting as defendant's agent, to see to it that he had a reasonably safe place in which to perform that service. No instruction was given him as to the manner in which the work should be done. The only danger to which he was exposed, when washing the cabin, was in falling off the boat into the water.

The applicable rule of law was stated by Mr. Justice Stone in *Lobenstein* v. *Whitehead, etc., Iron Co.*, 179 Mich. 279, 288, 289, as follows:

"We think that the common-law rule is that, where an inexperienced servant is put to dangerous work, or is sent into a dangerous place to work, outside of the scope of his employment, the master is liable for all injuries resulting to the servant from being exposed to those unusual risks which are not apparent, and which are not understood or appreciated by the servant, and which can only be learned by experience in doing the work; and that, unless the master warns, instructs, and informs the servant as to all the dangers incident to the work which are not discoverable from ordinary observation by an inexperienced person who would have no reason to anticipate danger, the master is liable where injury follows because of the servant's lack of knowledge, and because he was unwarned and uninformed. This principle is supported by many authorities in this State. A master is liable for injuries to his servant resulting from the master's negligence in exposing the servant to risks which the latter is incapable of appreciating. (Citing cases.)

"If decedent was taken from an employment in which he had been engaged, and put by defendant in an unsafe place, without instruction, the defendant might be liable. It was defendant's duty to know, not to infer, that plaintiff's decedent had this knowledge. *Charron* v. *Union Carbide Co.,* 151 Mich. 687."

In 18 R. C. L. p. 547, it is said:

"It is generally conceded to be a philosophic truth that a person's responsibility for his acts depends upon their tendency under the circumstances known to him. And the authorities, although at times somewhat confused, demonstrate the applicability of the principle in determining whether responsibility for an injury to an employee is to be attributed to the employer or to the employee himself. Fault on the part of the employer is to be found in action or non-

action accompanied by knowledge actual or implied of the probable results of his conduct; and, likewise, fault on the part of the employee is to be determined by the same test. Knowledge, then, or opportunity by the exercise of reasonable diligence to acquire knowledge, of the peril which subsequently results in injury to the employee is the foundation of the liability of the employer. Liability exists when the perils of the employment are known to the employer but not to the employee; and no liability is incurred when the employee's knowledge equals or surpasses that of the employer."

And at page 685:

"Ultimately the question becomes one of comparative knowledge; if an employee is in as good a position as his employer for ascertaining and understanding the situation, and equally well knows and appreciates the conditions, he cannot be allowed to complain for injuries sustained by working therein. For example, it is held that a servant cannot hold his master liable for injuries caused by the fact that the working place was unsafe, if he was in as good position to ascertain and understand the situation, and does equally well know and appreciate the existing conditions, as the master."

Applying these rules, which we think correctly state the law as applied to the relation of master and servant, we find no evidence in the record on which to predicate the claim of negligence on the part of the defendant. The only order given deceased was to assist defendant's son Erland to get the catboat in commission for service. It does not appear that he received any instruction from Erland.

If it be conceded that the deceased was ordered to engage in work in a place of danger and outside the scope of his employment, we are confronted by the question as to whether the risk to which he was ex-

posed was not apparent to him. The only instruction given him was to aid Erland in putting the catboat in commission. He was his own master in the performance of that work. While it was necessary to remove the boat from the boathouse to place the mast and sail on it, he himself decided on the place to which it should be anchored to do that work. The boat was not wide. It rocked and teetered as he stepped around on it. While he had had no experience in handling such boats, he was familiar with the water front and the use of small boats upon the river at that place. He had, while alone that morning, attached the sail to the mast. The washing of the deck and cabin would seem to have been a much less dangerous task.

We do not think it can be said that the deceased was so inexperienced in the work he was called upon to perform and was so exposed to risks not apparent to him that it became the duty of the defendant or his agent to warn him concerning them. A warning, if given, would have been to guard against the danger of falling from the boat when it was not resting safely upon the water. If that danger was apparent to him when performing the work, the warning would have been but an idle ceremony.

In our opinion, the motion for judgment notwithstanding the verdict should have been granted. The verdict and judgment are reversed and set aside, and the cause remanded, with directions to enter a judgment for the defendant, with costs of both courts.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.